543 So.2d 1309 (1989)
UNITED STATES AVIATION UNDERWRITERS, INC., Appellant,
v.
SUNRAY AIRLINE, INC., et al., Appellees.
No. 88-918.
District Court of Appeal of Florida, Fifth District.
June 1, 1989.
*1310 George A. Vaka of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellant.
Richard B. Troutman of Troutman, Williams, Irvin, Green & Troutman, P.A., Winter Park, for appellees Givens, etc.
Mason H. Grower, III and Brian D. Stokes of Taraska, Grower, Unger & Ketcham, P.A., Orlando, for appellee Sunray Airline, Inc.
ORFINGER, Judge.
Appellant United States Aviation Underwriters, Inc. (United) appeals from an adverse summary judgment which effectively determined that an insurance policy issued by United to Sunray Airline, Inc. (Sunray) provided coverage for an aviation crash in which the occupants were injured. Because we agree that there was no coverage, we reverse.
The basic facts were stipulated below. A Beech Aircraft Corp. 65-90 King Air, registration No. N58KA, powered by twin-turbine engines, crashed on April 5, 1986 near Fort Pierce. The aircraft was not owned by Sunray at the time of the accident. Mr. Smith, an employee of Sunray, was a pilot on board. The airplane crashed as a result of fuel starvation.
At the time of the accident United had a policy of insurance in force and effect, issued to Sunray which contained Endorsement # 7 providing liability coverage "for using non-owned aircraft." Under this endorsement, coverage was provided for a pilot such as Smith "while they're using an aircraft in their professional capacity for your business." The endorsement states:
This endorsement does not apply to aircraft covered elsewhere in your policy nor does it cover any of the following aircraft: ... (4) which is turbine powered.
The exclusions contained in the endorsement as to non-owned aircraft were the same as contained in the policy as it related to owned or leased aircraft. In other words, as the policy related to aircraft owned by Sunray or leased under written agreement, no coverage was provided to turbine-powered aircraft.[1]
United brought this declaratory action alleging, inter alia, that suit had been filed on behalf of James K. Givens, III, who had been on board the aircraft at the time of the crash and who was seeking damages for his injuries. It sought a judgment that the policy did not provide coverage because the non-owned aircraft involved was a turbine-powered craft.[2] Appellees each moved for summary judgment arguing that under Pickett v. Woods, 404 So.2d 1152 (Fla. 5th DCA 1981), and section 627.409(2), *1311 Florida Statutes, United could not deny coverage because the accident was in no way related to the fact that the aircraft was turbine-powered. In support of his motion, appellee Givens filed a National Transportation Safety Report listing the cause of the accident as fuel starvation as well as affidavits of John McWhorter and Thomas Lombardo, two air safety experts, who averred that the fuel starvation was caused by pilot error and would have occurred under the same circumstances regardless of the turbine-powered nature of the craft's engines.
Relying on Pickett v. Woods, supra, and based on the undisputed facts showing that the airplane crashed because of fuel starvation and the lack of any causal connection between the turbine-powered engines and the ultimate crash, the trial court entered summary judgment in favor of appellees. In Pickett, the aircraft involved in the accident was covered by the insurance policy. A provision of the policy stated that the policy would not apply to any insured who operated the aircraft while its airworthiness certificate was not in full force and effect. The Pickett aircraft did not have a valid airworthiness certificate in effect at the time of the crash, but it was clear that the crash had nothing to do with the lack of such certificate. The court held that there was coverage.
United urges that we recede from Pickett v. Woods,[3] and especially from its holding that section 627.409(2),[4] Florida Statutes (1987) applies to aviation insurance policies, but there is no need for us to do so because even if the statute does apply to aviation insurance, it does not extend coverage under the circumstances here, where no coverage exists in the first place. Notwithstanding the Pickett court's reluctance to decide if the policy clause involved there was a warranty, condition or exclusion, it is clear that the clause involved there was a "condition,"[5] so any reference in Pickett to "exclusions" is mere dictum. Section 627.409(2) relates to a "breach or violation by the insured of any warranty, condition or provision... ." It is difficult to comprehend how an insured may breach or violate something never covered by the policy.
Thus, we can see that in Pickett, the aircraft was covered so long as it maintained its airworthiness certificate. In explaining the application of section 627.409(2) to the facts before it, the Pickett court said:
The statute is designed to prevent the insurer from avoiding coverage on a technical omission playing no part in the loss. If the appellee's interpretation were accepted, it would actually be to the insurer's advantage that the insured failed to renew the airworthiness certificate. In such event, the insurer would collect a premium but would have no exposure to risk because the policy would no longer be effective.
*1312 Id. at 1153. There is no "technical omission" here. The aircraft involved was never insured under the policy, and we see nothing in Pickett nor in the anti-technical statute which indicates an intent to supply coverage where none existed prior to the loss in question.
In AIU Insurance Company v. Block Marina Investment, Inc., 544 So.2d 998 (Fla. 1989) the supreme court refused to extend coverage to a particular loss specifically excluded from the policy, which coverage had been asserted to exist because of the insurance company's failure to comply with the provisions of section 627.426(2), Florida Statutes (1985), which prohibits the denial of coverage "based on a particular coverage defense" where the insurer has failed to give the insured certain notices required by the statute. In holding that the statute did not apply, the court, noted that:
We do not believe that the legislature intended, by the enactment of section 627.426(2), to give an insured coverage which is expressly excluded from the policy or to resurrect coverage under a policy or an endorsement which is no longer in effect, simply because an insurer fails to comply with the terms of the aforementioned statute.
544 So.2d at 999. See also United States Fidelity and Guaranty Company v. American Fire and Indemnity Company, 511 So.2d 624 (Fla. 5th DCA 1987).
So too, here, we do not believe that the legislature intended, by adopting section 627.409(2), to give an insured coverage which is expressly excluded from the policy. So long as no public policy is violated, an insurer has a right to decide which risks it will and which it will not insure against. Neither should the courts rewrite insurance policies, thus placing on the insurer a financial burden which it specifically declined to accept. AIU, supra, 544 So.2d at 999. See also National Union Fire Insurance Company of Pennsylvania v. Carib Aviation, Inc., 759 F.2d 873 (11th Cir.1985) (an exclusion for conversion in an aviation policy will be given effect where loss occurred when converted airplane ran out of fuel).
The insurance policy in question provided no coverage for turbine-powered aircraft, just as no coverage was provided to helicopters, seaplanes or aircraft with more than eight seats. Therefore the trial court erred in holding that such coverage existed. The judgment appealed from is reversed and the cause is remanded with directions to enter judgment for United.
REVERSED and REMANDED.
SHARP, C.J. and COWART, J., concur.
NOTES
[1] Also not covered by the policy or endorsement No. 7 were rotary wing or water alighting aircraft, or aircraft with a seating capacity in excess of eight.
[2] U.S. Aviation also alleged no coverage was provided because Smith was outside the course and scope of his employment but this element of the action was dismissed by the court apparently because it was not a proper subject for declaratory relief.
[3] The result in Pickett v. Woods has been questioned. See Note, Florida's Anti-Technical Statute: Should Insurance Exclusions Be Included?  Pickett v. Woods, 404 So.2d 1152 (Fla. 5th DCA 1981), 10 Fla.St.U.L.Rev. 737 (1982).
[4] This section provides:

(2) A breach or violation by the insured of any warranty, condition, or provision of any wet marine or transportation insurance policy, contract of insurance, endorsement, or application therefor shall not render void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured.
[5] The operative provision in Pickett was clearly a condition subsequent, defined in 7 Couch On Insurance 2d, § 36:49 as:

A condition may be a condition subsequent; that is, the existence of satisfaction of the condition terminates or suspends the insurance. Clauses which provide that a policy shall become void or its operation defeated or suspended, or the insurer relieved wholly or partially from liability upon the happening of some event, or the doing or omission to do some act, are not conditions precedent, but conditions subsequent and are matters of defense to be pleaded proved by insurer.
A condition subsequent is to be distinguished from an exclusion from the coverage; the breach of the former is to terminate or suspend the insurance, while the effect of the latter is to declare that there never was insurance with respect to the excluded risk. Accordingly, the suicide clause in a life insurance policy is not a condition subsequent but rather suicide is simply not a risk insured against. [Footnotes omitted].