[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-16348

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 2, 2011
JOHN LEY
CLERK

D. C. Docket No. 08-61618-CV-CMA

ROLYN COMPANIES,INC.,

　　　　　　　　　　　　　　　　　　　　Plaintiff-Counter-
　　　　　　　　　　　　　　　　　　　　Defendant-Appellant,

versus

R & J SALES OF TEXAS, INC.,
d.b.a Precision Restoration and Roofing,
ADMIRAL INSURANCE COMPANY

　　　　　　　　　　　　　　　　　　　　Defendants-Appellees,

CRUM & FORSTER SPECIALTY INSURANCE COMPANY,

　　　　　　　　　　　　　　　　　　　　Defendant-Counter-
　　　　　　　　　　　　　　　　　　　　Claimant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 2, 2011)

Before BARKETT, MARCUS Circuit Judges, and RESTANI,[*] Judge.

PER CURIAM:

This case involves an insurance coverage dispute arising from certain damage to a residential building caused by heavy rain. Following a 2005 hurricane, the building association, Stonebridge Gardens in Lauderhill, Florida, hired Plaintiff Rolyn Companies, Inc. ("Rolyn"), a general contractor specializing in disaster-recovery construction, to repair its buildings. Rolyn retained a roofing subcontractor, R & J Sales of Texas, Inc. d/b/a Precision Restoration and Roofing ("Precision"), to repair the roofs. Due to Precision's alleged faulty workmanship, water intrusion damaged the interior of Building 2800 during a heavy rain. Rolyn repaired the interiors of all units of Building 2800 at a cost of over $1,300,000.

Rolyn filed suit against Precision for breach of contract, and against two insurance companies, Defendant Crum & Forster Specialty Insurance Company ("Crum & Forster") and Defendant Admiral Insurance Company ("Admiral"), seeking a declaration that insurance policies issued by the companies required them to defend and indemnify Rolyn and to reimburse Rolyn for any expenses or damages incurred. The district court granted summary judgment to the insurance

[*] Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

defendants upon determining that Rolyn was not covered under either insurance policy.

We review the district court's grant of summary judgment <u>de novo</u>, drawing all facts and inferences in the light most favorable to the non-moving party. <u>Dyer v. Lee</u>, 488 F.3d 876, 878 (11th Cir. 2007).

Rolyn raises four issues on appeal. First, Rolyn argues that the district court erred in finding that the "voluntary payments" exclusion in the Crum & Forster commercial general liability ("CGL") policy applied, thus precluding coverage under that policy. Second, Rolyn argues that the district court erred by concluding that exclusions related to asbestos and mold also precluded coverage under the Crum & Forster policy. Third, Rolyn argues that the district court erred in determining that Rolyn is not an "additional insured" under the Admiral policy, thus precluding coverage under that policy. Fourth, Rolyn argues that the district court erred in determining that coverage under the Admiral policy was also precluded by policy exclusions related to roofing operations. Upon review of the parties' briefs and the record on appeal, we agree with the district court that summary judgment was proper as to each Defendant. We now address each policy in turn.

## I.  CRUM & FORSTER POLICY

Because this is a diversity case, Florida law governs the scope of the Crum & Forster CGL policy. Davis v. Nat'l Med. Enters., Inc., 253 F.3d 1314, 1319 n.6 (11th Cir. 2001). The Florida Supreme Court has stated: "Our interpretation of insurance contracts, such as the CGL policies in this case, is governed by generally accepted rules of construction. Insurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage." U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 877 (Fla. 2007).

The Crum & Forster policy contains a voluntary-payment provision, which states:

> 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit
> . . . .
> d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Rolyn Cos. v. R & J Sales of Tex., Inc., 671 F. Supp. 2d 1314, 1326–27 (S.D. Fla. 2009). The district court held that this provision precluded Rolyn from recovering costs it incurred when it repaired Building 2800 because Rolyn did not seek Crum & Forster's consent before voluntarily incurring those costs. Rolyn Cos., 671 F. Supp. 2d at 1330. We agree.

As one Florida court has said regarding voluntary-payment provisions such

4

as the one at issue here:

> While an insured is free to enter into a reasonable settlement when its insurer has wrongfully refused to provide it with a defense to a suit, we find that the insured is not similarly free to independently engage in such settlements where, as here, the insurer had not declined a defense to suit. Consequently, . . . the insured's failure to comply with the relevant policy provisions relieved the insurer of its obligations under the policy . . . .

Am. Reliance Ins. Co. v. Perez, 712 So. 2d 1211, 1212–13 (Fla. Dist. Ct. App. 1998) (brackets omitted). Thus, a voluntary-payment provision, such as the one at issue here, "requires the insured to obtain the insurer's consent before settling." Id. at 1213.

Here, Rolyn did not obtain Crum & Forster's consent before incurring costs with regard to Building 2800. Although Rolyn argues that it was legally obligated to address the damage caused by its subcontractor, Precision, we agree with the district court that the costs incurred by Rolyn to repair the damage were not incurred "'involuntarily because of circumstances beyond [Rolyn's] control,' such as 'a situation requiring immediate response to protect its legal interests.'" Rolyn Cos., 671 F. Supp. 2d at 1327 (quoting Jamestown Builders, Inc. v. Gen. Star Indem. Co., 91 Cal. Rptr. 2d 514, 518 (Cal. Ct. App. 1999)). There is no indication in the record that Rolyn was required to respond immediately to fix the damage, and, in fact, in the time between the damage and the repairs, Rolyn

5

worked with Precision for several months to try to get Precision to repair the damage. Accepting Rolyn's broad definition of "legally obligated" would effectively delete the voluntary-payment provision from the policy. See Moore v. State Farm Mut. Auto. Ins. Co., 916 So. 2d 871, 877 (Fla. Dist. Ct. App. 2005) ("We will not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so.").

The action of Rolyn here falls into the category of failing to cooperate with the insurer. Such a "failure which constitutes a material breach and substantially prejudices the rights of the insurer in defense of the cause will release the insurer of its obligation to pay." Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC, 601 F.3d 1143, 1150 (11th Cir. 2010) (internal quotation marks omitted) (quoting Ramos v. Nw. Mut. Ins. Co., 336 So. 2d 71, 75 (Fla. 1976)). It appears obvious that completing the repair without consent would have a material effect on potential litigation, including settlement thereof. In any case, the district court was not called upon to resolve any issue of prejudice to the insurer, because such issue was not raised, as appellant's counsel stated at oral argument.[1]

Moreover, Rolyn was also not excused from seeking Crum & Forster's

---

[1] Counsel also stated that there is no claim of an implied consent by Crum & Forster to the repairs.

consent due to "the insurer's refusal to defend in a lawsuit to establish liability."

Jamestown Builders, 91 Cal. Rptr. 2d at 517. Crum & Forster never wrongfully

refused to provide Rolyn with a defense to any suit, and, in fact, Crum & Forster

defended Rolyn in a suit by the owner of one of Building 2800's units. Thus,

Rolyn had time to obtain Crum & Forster's consent before incurring these costs,

and nothing in the record provides an excuse for its failure to obtain such consent.

Because Rolyn failed to obtain Crum & Forster's consent before incurring costs to

repair Building 2800, we agree with the district court that the voluntary-payment

provision of the Crum & Forster policy bars recovery.[2]

## II. ADMIRAL POLICY

Under Florida law, "the laws of the jurisdiction where the contract was

executed govern interpretation of substantive issues regarding the contract."

Lumbermens Mut. Cas. Co. v. August, 530 So. 2d 293, 295 (Fla. 1988).

Therefore, because Precision's Admiral insurance policy was executed in Texas,

Texas law governs whether Rolyn is entitled to recover under that policy as an

additional-insured and whether exclusions apply. The parties do not assert any

---

[2] Because we agree that the CGL policy's voluntary-payment provision precludes recovery of any of the costs incurred by Rolyn to repair damages to the building at issue, we need not reach Rolyn's objection to the district court's determination that damages were also barred by exclusions in the policy related to asbestos and mold.

significant difference between Florida and Texas law.

We conclude that the district court properly decided that the Roofing Operations Exclusion in the Admiral policy precluded coverage by Admiral. It reads as follows:

> ROOFING OPERATIONS – LIMITATION OF COVERAGE
> . . . .
> This insurance does not apply to "property damage" to any building, structure or the contents thereof, caused by your failure or the failure of any subcontractor working on your behalf:
>
> 1. To properly cover any unfinished roof or section of roof during the course of roofing operations against the influx of wind, rain, sleet, hail, snow or any other substance.

Rolyn Cos., 671 F. Supp. 2d at 1336–37.

Rolyn does not dispute that at the time of the rain event at issue, the roof was yet to be completed with "tapered roof insulation, at least one more layer of felt to be 'mopped in,' a termination bar and counter-flashings." App. Reply Br. 25 (quoting Admiral Ans. Br. 15). Rather, the argument is that Precision would not be expected to place a tarp over the roof at this "dried in" stage. Thus, there is no genuine issue of fact that the roof was "unfinished" when a heavy rain caused the damage. While the roof may have been "dried in," it was not "properly covered" so as to prevent rain incursion. Therefore, summary judgment in favor

of Admiral was property granted.[3]

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

---

[3] Because Admiral is entitled to judgment as a matter of law on the Roofing Operations Exclusion in the Admiral policy, we need not address the additional-insured issue.