[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-10616

_____

D.C. Docket No. 9:12-cv-81250-KAM

EMBROIDME.COM, INC.,

Plaintiff–Appellant,

versus

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA,

Defendant–Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 9, 2017)

Before JORDAN and JULIE CARNES, Circuit Judges, and GOLDBERG,* Judge.

JULIE CARNES, Circuit Judge:

_____

*Honorable Richard W. Goldberg, United States Court of International Trade Judge, sitting by designation.

This appeal concerns a dispute between an insured and its insurer. The insured, plaintiff EmbroidMe.com, Inc. ("EmbroidMe"), was sued in federal district court based on alleged copyright infringement. Luckily for EmbroidMe, it had an insurance policy with defendant Travelers Property Casualty Company of America ("Travelers") in which Travelers agreed to indemnify EmbroidMe should the latter be deemed liable on this type of claim. The policy further provided that Travelers had a right and duty to defend its insured against any lawsuit seeking damages on such a claim.

Notwithstanding the existence of this policy, EmbroidMe chose not to notify Travelers of the claim filed against it or to request that Travelers provide EmbroidMe with a defense on the suit. Instead, EmbroidMe retained a law firm and litigated the case on its own in district court for over eighteen months, amassing legal bills exceeding $400,000 before finally notifying Travelers of the litigation and tendering the claim both for indemnification and defense purposes. Upon receipt of this notification, Travelers agreed that the policy potentially provided indemnification for the claim and, that being so, it further agreed to defend EmbroidMe going forward. Travelers refused, however, to reimburse EmbroidMe for the legal bills it had incurred during the lengthy period of time it chose to handle the litigation on its own. In fact, provisions of the policy make

2

clear that Travelers was not obligated to pay any expenses that its insured incurred in litigating a covered claim unless the insured had first obtained Travelers' consent to generate those expenses.

Because EmbroidMe had not obtained Travelers' permission (nor even informed Travelers of the claim filed against it), this very large omission would seem to foreclose any argument that it was entitled to reimbursement of these past legal fees. EmbroidMe nonetheless insists that it is entitled to reimbursement, relying on a Florida statute that requires an insurer who seeks to deny coverage based on a particular coverage defense to notify the insured of its reliance on that defense within thirty days of becoming aware of its existence. Here, Travelers first communicated to EmbroidMe its refusal to pay pre-tender legal expenses thirty-nine days after speaking with EmbroidMe's general counsel about the claim. EmbroidMe argues that because Travelers' notification was made after the thirty-day statutory deadline had elapsed (albeit by only a few days), it must now pay up on these pre-tender legal expenses that it never authorized.

The district court rejected EmbroidMe's argument, concluding that Travelers' refusal to reimburse expenses of EmbroidMe to which it had not consented did not constitute a coverage defense, meaning that the statutory time period for an insurer to notify its insured of its defense to coverage did not apply.

3

For that reason, the court granted Travelers' motion for summary judgment, and denied EmbroidMe's competing motion.  We agree with the district court and affirm its ruling.

## I.    BACKGROUND

Specializing in "embroidery, garment printing, custom apparel, promotional products, screen printing and personalized gifts at more than 300 resource centers throughout the United States, Canada and Australia," EmbroidMe is, according to its website, "the world's largest promotional products franchise."  Homepage, http://www.embroidme.com (last accessed Dec. 22, 2016).  In April 2010, JCW Software, LLC ("JCW") filed a copyright infringement lawsuit against EmbroidMe, alleging that the latter had improperly distributed copies of the former's "Fast Manager" software program in violation of a 2007 settlement agreement.

Although EmbroidMe was insured with Travelers under a liability insurance policy that potentially covered the particular claim at issue in the litigation and specified that Travelers had both the right and duty to defend EmbroidMe in such litigation, EmbroidMe did not contact Travelers to tender the claim or to request that Travelers assume its duty of representation.  Instead, it retained Florida law firm McHale & Slavin, P.A. ("McHale & Slavin") to handle the representation.

4

Thereafter, from June 2010 until October 2011, EmbroidMe paid all of McHale & Slavin's fees, with no notice to Travelers that there was even litigation pending.  But then on October 10, 2011—some eighteen months after the filing of the complaint against it—EmbroidMe decided to tender the claim and its defense of the underlying copyright infringement suit to Travelers.  A Travelers' case handler and EmbroidMe's General Counsel discussed the claim three days later.

On November 21, 2011, which was forty-two days after EmbroidMe tendered the claim to Travelers and thirty-nine days after the parties spoke, Travelers sent EmbroidMe a "reservation of rights" letter.  As to whether there was a duty to defend EmbroidMe in the litigation, Travelers agreed that because JCW's allegations against EmbroidMe appeared to fall within the policy's "web-site injury" provision, those allegations imposed on Travelers a duty to defend EmbroidMe.  Notwithstanding its obligation to defend EmbroidMe in the litigation, Travelers indicated, in the "coverage analysis" section of the letter, that it reserved the right to ultimately challenge its obligation to provide coverage for any damages imposed against EmbroidMe should certain facts be established during the litigation.  For example, should it be established that EmbroidMe's liability arose out of the commission of a dishonest, fraudulent, or malicious

5

wrongful act or out of a breach of contract, then damages imposed against EmbroidMe would not be covered by the policy.

In addition to Travelers' reservation of rights as to coverage issues, which was contained in the above "coverage analysis" section, the letter also included a section addressing "defense counsel issues." In that section, the letter acknowledged Travelers' "right and duty to defend including the right to appoint defense counsel." The letter indicated Travelers' willingness to consider continuing to use the attorneys that EmbroidMe had previously retained and noted the factors, including rates, that would influence Travelers in "any retention decisions." But the letter made clear that Travelers would pay only post-tender defense costs, which meant that it refused to reimburse EmbroidMe for the $405,989.84[1] the latter had spent on legal fees before tendering the copyright infringement claim to Travelers on October 10, 2011.

Having expressed the above positions on the issues of coverage and of the parameters of its duty to defend, Travelers assumed the defense of EmbroidMe in the copyright infringement lawsuit and soon thereafter contacted McHale & Slavin to discuss whether it would retain the firm to continue its representation of EmbroidMe in the litigation. Although of the opinion that the firm was well-

---

[1] In documents filed in the district court, EmbroidMe claimed to have expended $417,989.84 in pre-tender legal fees. The figure in the text above comes from briefs EmbroidMe filed in this Court, and is therefore the figure we use for purposes of this opinion.

qualified to handle the defense of EmbroidMe going forward, Travelers' case handler noted that he would have to discuss the firm's billing rates before formally retaining it.  It took a while for the law firm and Travelers to come to final terms on a retainer agreement, which they formally entered into on February 20, 2012.  Nonetheless, Travelers paid McHale & Slavin's their attorney's fees and costs incurred after the date of EmbroidMe's tender of the claim.[2]  Travelers refused, however, to pay McHale & Slavin at the $400 per hour rate it had been charging EmbroidMe prior to Travelers' entry into the case.  Instead, the retainer agreement ultimately arrived at obligated Travelers to pay only $315 per hour.

On March 1, 2012, shortly after Travelers had entered into the formal retainer agreement with McHale & Slavin, EmbroidMe sent a letter to Travelers stating its disagreement with Travelers' refusal to pay pre-tender legal fees, as set out in Travelers' November 2011 reservation of rights letter.  Not willing to take Travelers' earlier "no" for an answer, EmbroidMe repeatedly sought to change Travelers' mind as to the decision it had set out in its November 2011 letter.

Meanwhile, a flurry of activity was occurring in the litigation filed against EmbroidMe.  JCW filed a second, related suit against EmbroidMe in June 2012.  In addition, the district court dismissed the copyright infringement claims made in the

---

[2]  According to EmbroidMe, Travelers paid out approximately $300,000 in post-tender attorney's fees and costs between October 2011, when EmbroidMe first tendered the claim, and September 2012, which was shortly after EmbroidMe settled its litigation with JCW.

7

original 2010 action that had given rise to coverage for EmbroidMe under the "web site injury" provision of the insurance policy.  Ultimately, the district court directed JCW and EmbroidMe to engage in mediation of both the 2010 and 2012 lawsuits, and both cases settled on August 14, 2012.  Throughout all the above, Travelers continued to provide EmbroidMe a defense.

Shortly after the settlement, Travelers sent EmbroidMe a letter reiterating its position that it was not required it to pay the pre-tender defense fees and costs that EmbroidMe had incurred prior to tendering its claim to Travelers and without the latter's permission.  A couple of months later, EmbroidMe filed a breach of contract suit in state court against Travelers seeking reimbursement for these fees and costs.  Asserting diversity jurisdiction, Travelers removed the suit to the federal district court in the Southern District of Florida.

Each party filed a motion for summary judgment.  Essentially, these motions were mirror images of each other.  EmbroidMe contended that Travelers was estopped from denying its duty to pay pre-tender fees and costs because its communication of that denial was made after the deadline set for notification of coverage defenses by Florida's "Claims Administration Statute."  Fla. Stat. § 627.426 (1983).  In response and in support of its own summary judgment motion, Travelers contended that the policy provisions excluding it from any

8

responsibility to pay legal fees incurred by the insured without its prior approval

constituted an exclusion, not a defense to coverage of a claim.  In support,

Travelers noted that the Supreme Court of Florida has made it clear that the Claims

Administration Statute applies only to coverage <u>defenses</u>, not to coverage

<u>exclusions</u>.

The district court agreed with Travelers, granting its motion for summary

judgment and ruling that Travelers was not required to pay legal expenses that

EmbroidMe had unilaterally incurred prior to tendering the claim to Travelers and

during the time when EmbroidMe had chosen to handle its defense with no

involvement by Travelers.[3]  This appeal followed.

## II.    STANDARD OF REVIEW

We review the grant or denial of a motion for summary judgment *de novo*.

*Bank of Brewton v. Travelers Cos., Inc.*, 777 F.3d 1339, 1341–42 (11th Cir. 2015)

(citing *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir.

2014)).  An insurance policy is a contract and therefore interpretation of the

language in such a policy constitutes a ruling on a question of law, which is also

subject to *de novo* review.  *Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219

---

[3]  As to the parties' appeals of discovery rulings made by a magistrate judge, the district court concluded that the magistrate judge's order was neither clearly erroneous nor contrary to law, and affirmed it, denying all other remaining motions as moot.  EmbroidMe has also appealed that ruling, but we need not address that issue given our affirmance of the district court's order granting summary judgment to Travelers.

(11th Cir. 2015) (citing *Graber v. Clarendon Nat'l Ins. Co.*, 819 So. 2d 840, 842 (Fla. 4th DCA 2002)).

Because this action was removed to federal court on the basis of diversity jurisdiction, state law controls as to any issue not governed by the Constitution or treaties of the United States. *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1148 (11th Cir. 2010). The parties agree, as do we, that Florida law governs this dispute. When we address issues of state law, we are therefore bound by decisions issued by that state's appellate courts. However, when we have issued a precedential decision interpreting that state law, our prior precedent rule requires that we follow that decision, absent a later decision by the state appellate court casting doubt on our interpretation of that law. *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 586 F.3d 950, 957 (11th Cir. 2009). *Accord Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1451 (11th Cir. 1991); *Newell v. Harold Shaffer Leasing Co., Inc.*, 489 F.2d 103, 107 (5th Cir. 1974).

## III.  DISCUSSION

The district court granted Travelers' motion for summary judgment, ruling that Travelers was not required to pay the legal expenses that EmbroidMe incurred prior to tendering the claim to Travelers, during which time period EmbroidMe

10

chose to handle alone its defense of the JCW litigation, with no involvement by or assistance from Travelers. The court concluded that the insurance contract expressly excluded expenses incurred by an insured absent the agreement of Travelers to pay those expenses. Further, the above constituted an exclusion from coverage, not a defense to coverage that was otherwise provided by the policy. This distinction was significant because had Travelers' refusal to pay for pre-tender legal expenses been considered to be a defense to coverage of a claim, the Florida Claims Administration Statute ("CAS") would kick in and require that Travelers have notified EmbroidMe of this defense within the time limits provided for by the statute, which it did not do. But because Travelers relied on an exclusion, not a coverage defense, its failure to notify EmbroidMe within the time period set out in the statute did not estop Travelers from relying on that ground in refusing to pay these unapproved expenses.

Accordingly, resolution of this appeal turns on whether Travelers was required to comply with the CAS when asserting its refusal to reimburse EmbroidMe for pre-tender defense fees the company chose to incur. We agree that Travelers relied on an exclusion, not a coverage defense, in its refusal to pay EmbroidMe's pre-tender legal expenses, and therefore the CAS does not control. Although there is no Florida case squarely addressing the facts of this case, we are

11

guided by the interpretation that Florida law has given to these two terms in other disputes involving their definition. Based on that review, we conclude that the policy here excludes from coverage legal expenses incurred by an insured without the approval of the insurer. Travelers' reliance on this policy provision constitutes the assertion of a policy exclusion, not a defense to coverage. Further, EmbroidMe's contrary position tends to conflate the concepts of an insurer's duty to defend and its duty to timely convey a coverage defense.

A.    The Terms of the Insurance Policy Precluded EmbroidMe From Reimbursement of Attorney's Fees That It Incurred Without First Obtaining Travelers' Consent

EmbroidMe argues that it is entitled to reimbursement of the almost half million dollars in attorney's fees that it incurred prior to ever advising Travelers that it wanted Travelers to defend it in the litigation and to indemnify it for any damages imposed on it as a result of the covered claims. The clear language of the policy, however, contradicts EmbroidMe's assertion that it is entitled to reimbursement of these pre-tender legal fees.[4]

---

[4] Travelers contends that even had the policy not put EmbroidMe on notice that Travelers was not obliged to pay any expenses that EmbroidMe incurred without first clearing those expenses with Travelers, both Florida law and persuasive authority from other states hold that an insurer has no duty to pay pre-tender defense costs. Because we conclude that the policy here disallowed reimbursement of these pre-tender legal fees, we do not decide Travelers' broader argument.

12

The commercial liability policy entered into by Travelers and EmbroidMe is fairly straight-forward.  It provides, subject to specified monetary caps, that Travelers will pay those sums that EmbroidMe becomes legally obligated to pay as damages because of bodily injury, property damage, and personal and advertising injuries, including web-site injuries.  In short, Travelers promises to indemnify EmbroidMe for damages for which it becomes liable.  Further, Travelers has a "right and duty to defend" the company in suits seeking damages that are covered by the policy.

Beyond imposing on Travelers a duty to indemnify EmbroidMe against damages assessed against it, the policy also addresses responsibility for the payment of any expenses arising from defense of the litigation.  The policy indicates that Travelers will cover "all expenses [it] incurs."  It further makes clear that EmbroidMe will not be reimbursed for any expenses that it elects to incur on its own, absent the consent of Travelers to those expenses.  Specifically, the policy provides that "no insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." (emphasis added).  Further amplifying that exclusion, in the section listing those expenses for which Travelers is responsible, the policy provides that Travelers will pay "[a]ll reasonable expenses incurred by the insured

13

at our request to assist us in the investigation or defense of the claim or 'suit', including actual loss of earnings up to $250 a day because of time off from work." (emphasis added).

In short, the clear language of the policy—if not common sense—would alert even the most unsophisticated insured to the reality that, if sued, it could not expect its insurer to reimburse it for attorney's fees it unilaterally incurred unless the insured had first obtained Travelers' permission to incur those expenses. EmbroidMe is hardly an unsophisticated insured.  When it embarked on its own very expensive and prolonged defense of the underlying litigation, purposefully electing not to notify or seek Travelers' assistance in defending the case, it did so with full knowledge that provisions of the policy forbade reimbursement of the expenses it was incurring.  *Cf. Am. Reliance Ins. Co. v. Perez*, 712 So. 2d 1211, 1212–13 (Fla. 3d DCA 1998) (policy provision prohibiting an insured from voluntarily incurring an expense meant that the insured was required to obtain insurer's consent before settling and thus insurer had no duty to indemnify insured); *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 695 So. 2d 475, 477 (Fla 3d DCA 1997) (where policy provision directed insured not to settle claim without written consent of insurer, and where insurer had not

14

declined a defense to suit, insurer was not obliged to indemnify insurer for a settlement made without the latter's written consent).

Notwithstanding the contrary policy language, EmbroidMe argues that it can still prevail on its claim for reimbursement because Travelers failed to timely notify EmbroidMe that Travelers was unwilling to pay these previously-incurred expenses. According to EmbroidMe, because of this untimely notification, Travelers ran afoul of the CAS and, as a result, it cannot enforce those terms of the policy disallowing a demand for reimbursement of unconsented-to expenses. We disagree, but to provide some context, we first set out the general principles governing the distinction between an insurer's duty to defend and its duty to indemnify its insured for damages for which the insured is held liable.

B.      Florida Standards Governing the Duty to Defend versus the Duty to Indemnify an Insured

An insurance policy typically requires an insurer not only to indemnify its insured against any damages award based on a claim covered by the policy but also to defend the insured in any action against it to recover these damages. Thus, it is well-settled under Florida law that an insurer's duty to defend an insured is separate and distinct from the question whether it has a duty to indemnify the latter against the imposition of damages. *Mid-Continent Cas.Co.*, 601 F.3d at 1148 (citations to supporting Florida case authority omitted). An insurer is required to

15

indemnify its insured only for that conduct or occurrence that is covered by the policy.  But its duty to defend its insured is broader because an insurer's duty to defend under Florida law is determined solely by the allegations of the complaint in which the insured has been sued, and if those allegations identify facts within the scope of the policy's coverage, the insurer must defend.  *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993); *Trizec Props., Inc. v. Bitmore Constr. Co., Inc.*, 767 F.2d 810, 811 (11th Cir. 1985).  This is so even if it is uncertain whether coverage of the claim exists under the policy.  *Mid-Continent Cas. Co.*, 601 F.3d at 1149.  In short, an insurer may be required to defend its insured even though it might ultimately turn out that it is not actually responsible for indemnifying the insured for the damages awarded on the claim that originally triggered the duty to defend.

An insurer obligated to defend its insured, notwithstanding an uncertainty that any damages ultimately awarded will be subject to coverage under the policy, may shield itself from ultimately having to indemnify the insured by providing a defense under a reservation of its right to contest coverage.  *Id.*  Such a conditional defense, "resolves the urgent question of who shall defend and postpones resolution of the contingent question of who shall pay any judgment."  *Id.* (internal citation omitted).

16

An insurer does not breach its duty to defend by offering to defend under a reservation of rights. *Id.* Yet, because an insured might be concerned that an insurer who defends under a reservation of rights will be half-hearted in its defense of the case, Florida law does not require an insured to accept such a defense. *Id.* Instead, the decision by the insurer to defend under a reservation of rights constructively transfers to the insured the power to defend the case. *Id.* In short, "if the insurer offers to defend under a reservation of rights, the insured has the right to reject the defense and hire its own attorneys and control the defense," without jeopardizing its right to later seek indemnification from the insurer for liability. *Id.* (quoting *BellSouth Telecomm., Inc. v. Church & Tower of Fla., Inc.*, 930 So. 2d 668, 671 (Fla. 3d DCA 2006)); *Travelers Indem. Co. of Ill. v. Royal Oak Enter., Inc.*, 344 F. Supp. 2d 1358, 1370 (M.D. Fla. 2004) (citing *Taylor v. Safeco Ins. Co.*, 361 So. 2d 743, 745 (Fla 1st DCA 1978)). But the insured must actually reject the insurer's defense. *Aguero ex. rel. Iglesias v. First Am. Ins. Co.*, 927 So. 2d 894, 898 (Fla. 3d DCA. 2005) (finding persuasive *Travelers Indem. Co. of Ill. v. Royal Oak Enter., Inc.*, 344 F. Supp. 2d 1358, 1370–71 (M.D. Fla. 2004)).

In addition, if an insurer provides a defense so inadequate that the insurer can be said to have "forced" the insured to obtain its own counsel, then the insurer will be entitled to recover all reasonable costs and attorney's fees incurred at the

17

trial level. *Travelers Indem. Co. of Ill.*, 344 F. Supp. 2d at 1369 (citing *Carrousel Concessions, Inc. v. Fla. Ins. Guar. Ass'n*, 483 So. 2d 513, 517 (Fla. 3d DCA 1986)).

C.    Inapplicability of the CAS to Travelers' Denial of Reimbursement of Attorney's Fees Incurred Without Its Permission

1.    The CAS

In order to be allowed to assert a defense contesting the insurance policy's coverage of a claim made against its insured, a liability insurer must comply with the CAS. The CAS requires a liability insurer to notify its insured within a prescribed time period of any defense that it intends to assert in support of its denial of an obligation to cover the legal claim being made against the insured. It states in pertinent part:

> (2) A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:
>
> (a)    Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; and
>
> (b)    Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer:

18

1.     Gives notice to the named insured by registered or certified mail of its refusal to defend the insured;

2.     Obtains from the insured a nonwaiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer during and following the pendency of the subject litigation; or

3.     Retains independent counsel which is mutually agreeable to the parties.  Reasonable fees for the counsel may be agreed upon between the parties or, if no agreement is reached, shall be set by the court.

Fla. Stat. § 627.426(2).

Translating, within thirty days of becoming aware of a coverage defense, a liability insurer must give its insured written notice that it is reserving the right to deny coverage based on that defense.  In addition, within sixty days thereafter, the liability insurer must take one of the three steps listed above.

In its November 21, 2011 letter, Travelers informed EmbroidMe, among other things, of its refusal to pay defense expenses incurred by EmbroidMe prior to tendering the claim to Travelers and without obtaining the latter's consent.  But this November 21 letter was sent more than 30 days[5] after Travelers had been

---

[5]  Depending on the date that one assumes Travelers to have become aware that EmbroidMe intended for Travelers to reimburse it for the earlier attorney's fees, the letter was sent either 39 days or 42 days after this knowledge could be imputed to Travelers.

alerted to the fact that EmbroidMe had incurred these expenses.[6]  Accordingly, if Travelers' denial of EmbroidMe's request for reimbursement of legal expenses could be construed as a denial of coverage based on a coverage defense, then Travelers' failure to so notify EmbroidMe within the deadlines set by the CAS meant that it was estopped from contesting this request for reimbursement.

In short, if the grounds for Travelers' refusal to pay the $400,000+ pre-tender legal expenses generated by EmbroidMe constituted a coverage defense, then Travelers notified EmbroidMe too late of that defense under the CAS, and it would be estopped from relying on those grounds to justify non-payment.  If, however, the basis for Travelers' refusal to reimburse EmbroidMe cannot be

---

[6]  Whether Travelers complied with one of the three conditions required by the CAS to be performed within 60 days after giving notice is more difficult to assess on the odd facts of this case. Travelers provided a defense to EmbroidMe through the conclusion of the litigation so there was obviously no need to notify EmbroidMe that it was declining to provide a defense.  As to obtaining a non-waiver agreement from EmbroidMe, the latter declined to sign a non-waiver agreement, albeit it nonetheless accepted Travelers' defense throughout the litigation. Finally, as to whether Travelers retained independent, mutually agreeable counsel, it certainly did so, agreeing to retain the very counsel that EmbroidMe had chosen to litigate the action prior to involving Travelers in the case and which counsel EmbroidMe wished to continue using. Travelers was not able, however, to formalize the continued retention of this counsel within the sixty-day period of time, at least in part because of the situation created by EmbroidMe when it entered into a retainer agreement with these lawyers without first obtaining Travelers' consent. Specifically, EmbroidMe had negotiated an hourly rate with this firm that was well above the hourly rate that Travelers was willing to pay and ultimately in fact agreed to pay.  Thus, Embroidme's own failure to obtain Travelers' consent to the initial hiring of this law firm was a factor in Travelers' inability to finalize the firm's continued retention within the 60-day period.

Nevertheless, as Travelers did fail, within the first 30-day period, to notify EmbroidMe of its refusal to pay previously-incurred attorney's fees, if that refusal constitutes a coverage defense subject to the CAS, then Travelers did not meet the 30-day time limit of the statute to convey that defense.  Thus, we do not have to resolve the import of Travelers' conduct during the 60-day time period.

characterized as a coverage defense, then the CAS does not apply, and we are free to enforce the terms of the policy on this matter, which terms foreclose EmbroidMe from obtaining reimbursement of these fees.

As explained below, we conclude that the question whether an insurer has to reimburse an insured for legal expenses incurred without the permission of the insurer, and prior to even tendering the claim to the latter, does not—at least under the terms of this policy—constitute a coverage question. That conclusion necessarily means that the insurer's ground for disclaiming the above duty to reimburse does not constitute a coverage defense, and therefore the CAS does not operate to estop the insurer from contesting the right of the insured to this reimbursement under the policy.

Along these same lines, Florida law makes a distinction between a provision of a policy subject to a coverage defense and a provision that constitutes an exclusion from coverage. According to Florida law, the assertion of a coverage defense comes within the CAS and its corresponding time limits, but a defense that a policy provision excludes coverage is not subject to the CAS's deadlines or even to its requirement that notice be given. The policy provision here precluding reimbursement for litigation expenses incurred by an insured without the prior

21

consent of the insurer falls within the exclusion category, not the coverage defense classification.

Finally, if extended to its logical conclusion, EmbroidMe's argument essentially conflates a liability insurer's duty to defend its insured with its duty to indemnify the insured should the latter be deemed liable for injuries covered by the liability policy. The duty to indemnify an insured has been the focus of cases examining an alleged breach of the CAS. As noted, an insurer must timely notify the insured of any potential defense that it intends to assert in denial of a duty to cover the insured for any damages the latter becomes liable to pay. The duty to defend is an entirely different concept and cases that have considered an alleged breach of that duty have employed a different standard than does the CAS.

> 2.  Travelers' Refusal To Reimburse EmbroidMe For Prior Legal Expenses Did Not Constitute a Refusal to Provide Coverage And Therefore Its Grounds for Refusing Did not Constitute a Coverage Defense

As noted, the CAS kicks in only when an insurer has failed to timely notify its insured of a coverage defense. The consequence to a liability insurer for its violation of the CAS is the insurer's inability to use that particular defense as a ground to avoid indemnifying the insured for damages the latter has been found liable to pay. Typically, then, a violation of the CAS will mean that the insurer will be estopped from contesting its duty to indemnify the insured for any damages

22

that have been imposed.  The question here is whether assertion of the policy's prohibition on an insured's incurring of expenses without the prior approval of Travelers is a coverage defense, or something different.

The seminal case addressing the meaning of a coverage defense under the CAS is *AIU Insurance Company v. Block Marina Investment, Inc.*, 544 So. 2d 998 (Fla. 1989).  In that case, the liability policy contained an express exclusion of coverage for damage to property in the custody of the insured.  Although an endorsement to the policy had been written at some point during the insurance relationship to provide coverage for such property in the insured's custody, that endorsement had later been eliminated from the policy and was not in operation when the alleged act of negligence by the insured arose.  Thus, the particular claim against the insured was not covered by the policy and, in fact, was expressly excluded.  In any event, insurer AIU agreed it would defend the insured, Block Marina, in the litigation, but it did so subject to a reservation of its right to assert a coverage defense.  Then, two weeks before trial, the insurer switched course and refused even to defend the insured.  But the insurer's notification had run afoul of the time limitation provisions of the CAS, which meant that, if the CAS applied, the insurer would be required to indemnify its insured, notwithstanding that the policy did not cover the damages at issue.  So the question before the Florida

23

Supreme Court was whether the insurer's defense to the insured's claim constituted a coverage defense subject to the CAS.  The Supreme Court answered that it did not, reasoning as follows.

The court first observed that the effect of a ruling precluding the insurer's challenge would be to provide coverage to the insured for something that the policy had "expressly excluded" from coverage.  *Block Marina*, 544 So. 2d at 999. The court did not read the CAS as giving an insured coverage that was explicitly excluded from a policy "simply because an insurer fails to comply with the terms of the [CAS]."  *Id.*  The court explained that the CAS is intended to work as an estoppel provision such that where coverage exists, the insurer is estopped from challenging that coverage based on a defense to what would otherwise be its obligation to cover the claim.  But regardless of whether the insurer has violated the CAS, this statute cannot be used to "create or extend coverage" that otherwise does not exist, which is what would happen if the CAS could create coverage in contradiction of an express coverage exclusion.  *Id.* at 1000.  Indeed, to do so, would constitute a rewriting of the insurance contract to impose on the insurer a financial burden that it had specifically declined to accept.  *Id.*  In short, the court held that an insurer's "failure to comply with the requirement of the [CAS] will not bar an insurer from disclaiming liability  . . . where the coverage sought is

24

expressly excluded or otherwise unavailable under the policy or under existing law." *Id.*

Courts applying Florida law have followed *Block Marina*'s holding that an insurer who fails to comply with the CAS's notification requirements is not estopped by that statute from later refusing to make payment on a matter excluded by the policy. *See, e.g.*, *Danny's Backhoe Svc., LLC v. Auto Owners Ins. Co.*, 116 So. 3d 508, 511 (Fla. 1st DCA 2013) (notice requirement under CAS only applies where insurer asserts coverage defense to coverage that otherwise exists; where the policy expressly excluded coverage of rental property, the CAS does not apply); *Max Specialty Ins. Co. v. A Clear Title & Escrow Exch., LLC*, 114 F. Supp. 3d 1191, 1196 (M.D. Fla. 2013) (non-compliance with CAS did not estop insurer from indemnifying based on a criminal act that was expressly excluded by the policy); *Hartford Ins. Co. of the Midwest v. Bellsouth Telecomm., Inc.*, 824 So. 2d 234 (Fla. 4th DCA 2002) (insurer's assertion of policy provision containing an anti-stacking clause that limited insurer's amount of liability for each accident did not constitute a denial of coverage and was therefore not subject to the CAS); *Almendral v. Sec. Nat'l Ins. Co.*, 704 So. 2d 728, 730 (Fla. 3d DCA 1998) (where uninsured motorist coverage was expressly excluded by terms of policy, insurer's failure to adhere to requirements of CAS did not bar it from disclaiming liability);

*Scottsdale Ins. Co. v. Deer Run Prop. Owner's Ass'n, Inc.*, 642 So. 2d 786 (Fla. 4th DCA 1994) (where policy did not provide coverage for insured's contractual obligation to pay attorney's fees, insurer's failure to comply with CAS in so notifying insured did not estop insured from refusing to pay); *State Farm Mut. Auto. Ins. Co. v. Hinestrosa*, 614 So. 2d 633, 635–36 (Fla. 4th DCA 1993) (where policy excluded coverage for any member of insured's family, insurer's statement that it had no known policy defenses did not trigger application of the CAS to estop the insurer's later refusal to indemnify the insured based on a policy provision excluding family members from coverage); *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Goldman*, 548 So. 2d 790, 792 (Fla. 2d DCA 1989) (policy excluded coverage for acts of deliberate dishonesty, on which acts the claim was based, and accordingly the CAS did not apply); *Pac. Emp'rs Ins. Co. of Los Angeles, CA v. Ott*, 545 So. 2d 462, 463–64 (Fla. 3d DCA 1989) (insistence by insurer on enforcement of policy limits was not a coverage defense subject to the CAS); *U. S. Aviation Underwriters, Inc. v. Sunray Airline, Inc.*, 543 So. 2d 1309, (Fla. 5th DCA 1989) (express policy exclusion for turbine-powered aircraft, so CAS did not apply).

Here, the policy clearly excluded any obligation by Travelers to pay expenses that EmbroidMe chose to incur on its own, absent an agreement by

26

Travelers permitting EmbroidMe to incur those expenses. EmbroidMe chose to incur over $400,000 in legal expenses without securing Travelers' consent. The policy expressly excluded such costs. Accordingly, Travelers' subsequent refusal to reimburse those expenses did not constitute a coverage defense that required Travelers to comply with the provisions of the CAS.

Indeed, the estoppel principles that underlie the CAS are particularly inapt on these facts. Specifically, *Block Marina* and its progeny note that the CAS acts to estop an insurer who has not timely notified an insured that it is reserving its right to ultimately disclaim any responsibility to indemnify the insured for damages that the latter may be required to pay. Because such a half-hearted attitude on the part of the insurer may compromise its motivation to give the insured a full-throated defense, the CAS acts to make sure that the insured is put on notice of the insurer's ambivalence and of the options available to the insured. The notion behind any rule of estoppel is to foreclose one who has made a representation from avoiding responsibility for the harm caused to those who reasonably relied on the representation. The time-limitations placed by the CAS on the specified notice serve to discourage procrastination on the part of the insurer in properly advising its insured. In short, estoppel is typically forward-looking as to the decisions of the insured it is seeking to protect. An insured who knows that

27

its insurer may ultimately deny coverage is forewarned to take other steps to protect itself, such as taking over the defense of the litigation.

But here, EmbroidMe had already incurred the attorney's fees in question well before Travelers even knew about the pending litigation or was required to notify EmbroidMe of any reservation of rights. Whether or not Travelers was willing to absorb sunk costs that it had no role in creating, that decision could have no impact on any decisions going forward that EmbroidMe might make about the ongoing litigation: that is, whether EmbroidMe might choose to continue to go it alone in the litigation or to accept counsel that Travelers appointed, once it had finally been brought into the litigation.[7]

Finally, the CAS speaks of the "denial of coverage" based on the non-disclosure of a "coverage defense." The term "coverage" typically connotes coverage of a claim, such that the insurer will indemnify the insured for any damages, up to policy limits, that the insured is found liable to pay. Indeed, the

---

[7] At oral argument, EmbroidMe's counsel was asked whether, once Travelers had been brought into the litigation and was directing the defense with its own appointed counsel, EmbroidMe contends it would have continued to be entitled to reimbursement for additional expenses for lawyers or investigators that it chose to unilaterally incur without Travelers' consent. If the answer to that question was "no," it is not clear why the same answer would not apply to EmbroidMe's pre-tender incurring of these expenses. If the answer to that question was "no" only so long as Travelers had complied with the CAS once it learned that Embroidme was running its own independent litigation operation, it is not at all clear how the CAS, whose time limitations periods are typically triggered by an initial tender of the claim to the insurer, would even operate in such a context. Counsel for EmbroidMe was uncertain of the answer to the question.

28

insurer's duty to indemnify is the context in which Florida caselaw has typically examined the applicability of the CAS.  In contrast, given that Florida has developed extensive caselaw addressing the subject of an insurer's duty to defend, and the remedies applicable when it fails to satisfy that duty, any claim by an insured deriving from an alleged breach of that duty to defend can be reasonably expected to be decided according to that law, not the CAS.  For that reason, it is no surprise that, with one exception, we have found no Florida case that has applied the CAS for purposes of remedying an alleged breach of a duty to defend.  Embroidme relies on this case—*Nationwide Mutual Fire Insurance Company v. Beville*, 825 So. 2d 999 (Fla. 4th DCA 2002)—but, as discussed below, *Beville* does not alter our conclusion that Travelers is not required to reimburse EmbroidMe for legal expenses it incurred without Travelers' permission.

      3.     *Beville* Is Distinguishable

EmbroidMe relies on *Beville* in support of its argument that Travelers violated the CAS's time limits when it belatedly advised EmbroidMe that it would not provide reimbursement for legal fees previously incurred without Travelers' consent.  We find *Beville* to be distinguishable from this case.

In *Beville*, after settling a lawsuit directed against him, the insured sought to recover his litigation costs from his liability insurer.  The policy contained a

29

provision directing the insured to provide notice to the insurer of any lawsuit as soon as practicable.  The insurer contended that the insured had violated that provision by failing to advise the insurer at the outset of the litigation, instead waiting until six months into the litigation to provide notification.[8]  Once notified of the litigation, the insurer agreed to defend the insured but did so under a reservation of its right to ultimately deny any coverage of damages.  *Id.* at 1001.  The insured declined the insurer's offer and took charge of the defense of the case itself, ultimately settling the case.

The Florida Fourth District Court of Appeals held that the insurer's offer of a defense, while maintaining its right to ultimately deny coverage, was the same as if the insurer had altogether refused to provide any defense at all.  This meant that the insurer had ceded control of the litigation to the insured, who was empowered to settle the case and to recover from the insurer both the costs of defense and indemnification for the settlement.  The court further observed that because the insurer had reserved its right to deny coverage, the insurer was required by the CAS either to obtain from the insured an agreement to so proceed under those terms or to furnish mutually acceptable counsel to defend the insured against the

---

[8]  Actually, the insured disputed this assertion.  The insured testified that he had presented the suit papers to his insurance agent early in the litigation; the agent admitted that he had met with the insured, who had mentioned some pending litigation but who never presented him with any paperwork.  For purposes of deciding the insured's motion for summary judgment, the court assumed the agent's testimony to be accurate.

claim.  Having done neither, the court concluded that the insured had the right to proceed on its own and the insurer owed the former the costs of defense.

As to whether the insurer owed the insured the costs of the defense during the six-month period of time before the insured had notified it of the lawsuit, the insurer denied any responsibility for these expenses based on the insured's failure to comply with the policy provision requiring written notice of the pending litigation as soon as practicable.  The court likewise found this argument unpersuasive, given the applicability of the CAS.  That is, having asserted a reservation of its right to deny coverage based on this untimely notice and having failed to obtain mutually agreeable counsel to represent the insured in the litigation, the insurer violated the CAS.  Based on this breach, the court held that the insurer was required to pay for the litigation costs incurred prior to being notified of the litigation.

There are several potential arguments that undermine a contention that *Beville* controls resolution of the present case.  First, *Beville* never grapples with the question how the text of the CAS supports the award of defense costs, as opposed to merely requiring coverage of a disputed claim, to an insured who seeks reimbursement of the former.  The CAS provides, as the only sanction for its violation, the insurer's inability "to deny coverage based on a particular coverage

31

defense." The coverage defenses reserved by Travelers in this case asserted lack of coverage for a fraudulent act or for a breach of contract by EmbroidMe. Arguably then, the only consequence for Travelers' non-compliance with the CAS (based on its failure to meet the 30-day deadline to assert coverage defenses) should be its ultimate inability to rely on those defenses to deny coverage to EmbroidMe for any damages awarded against it. But Travelers did provide indemnification for the damages EmbroidMe ultimately paid, so that is not an issue here.

Indeed, another district court of appeal has addressed this question more directly than did *Beville*, and that court held that "the Claims Administration Statute is not an award of attorney's fees and costs, as the *Beville* court suggests, but the preclusion of 'coverage defenses.'" *Travelers Indem. Co. of Ill. v. Royal Oak Enter., Inc.*, 344 F. Supp. 2d 1358, 1370 (M.D. Fla. 2004) (citing *Fans & Stoves of Jacksonville, Fla. v. Aetna Cas. & Surety Co.*, 549 So. 2d 1178 (Fla. 1st DCA 1989)). In *Fans & Stoves*, the insurer indicated its willingness to defend the case, but reserved its right to contest coverage as to counts involving intentional torts. Although it notified the insured, the insurer failed to send the notice by registered mail and it did not obtain mutually-agreeable, independent counsel to defend the suit, which meant that the insurer had run afoul of the CAS. The insured had objected to the counsel named by the insurer and hired its own

32

attorney to handle the litigation.  Following the conclusion of the trial, which the insured won, the insured sued to recover the attorney's fees it expended in hiring its own counsel, relying on the insurer's non-compliance with the CAS.

The trial court rejected the insured's argument, concluding that an insured's attorney's fees to defend a case "were not the type of damages contemplated by the statute and that the statute did not authorize appellant to hire his own attorney at appellee's expense."  549 So. 2d at 1179.  The First District Court of Appeals agreed, noting "[the CAS] makes no reference to attorney fees, the only express penalty for an insurer's noncompliance being to preclude the insurer from denying coverage 'based on a particular coverage defense.'"  Accordingly, it affirmed.  *See also Scottsdale Ins. Co. v. Deer Run Prop. Owner's Ass'n, Inc.*, 642 So. 2d 786, 787 (Fla. 4th DCA 1994) (insurer's non-compliance with the CAS did not estop it from denying insured's request for reimbursement of attorney's fees to its opposing party because "the lack of coverage for an insured's contractual obligation to pay attorney's fees is not a 'coverage defense' to coverage which, but for some breach of condition, otherwise would exist.").

In short, were we to follow the approach taken in *Fans & Stoves*, as opposed to that taken in *Beville*, we would conclude that because the CAS does not mention reimbursement of attorney's fees as a consequence of non-compliance, an award of

33

such fees (on which there exists an extensive independent body of Florida law, *see infra)* is not a remedy provided for by the statute.

Second, there is a factual distinction between this case and *Beville*. In *Beville*, the court noted that even if the CAS were not applicable, it would still require reimbursement of the insured's previously-incurred attorney's fees because there had been "no suggestion that the insured's expenses in defending [for the period prior to notifying the insurer] were unreasonable or in some way prejudiced the carrier." 825 So. 2d at 1004. Here, however, Travelers was obviously prejudiced by EmbroidMe's decision to start the defense of its case, on its terms, without bothering to tell Travelers. Specifically, EmbroidMe paid its attorneys a substantially higher hourly rate than Travelers ultimately agreed to pay these same lawyers, and EmbroidMe seeks reimbursement of that full and enhanced rate.

But leaving aside the questionable legal underpinning of *Beville* and the above-described factual distinction*,* we will nevertheless assume that, per *Beville*, the CAS  potentially permits  the reimbursement of previously-incurred attorney's fees—not just the loss of a defense to an obligation to indemnify—within its menu of sanctions for non-compliance. Even so, *Beville* does not warrant reimbursement of attorney's fees in the present case. As set out above, a violation of the CAS does not estop an insurer from asserting an exclusion, as opposed to a defense to

34

coverage that otherwise exists.  Indeed, in *Block Marina*, the Florida Supreme Court made it clear that an insurer's violation of the CAS does not entitle an insured to coverage of matters that are excluded by the policy.  *Beville* addressed a coverage defense, which was the insurer's assertion of a general policy provision requiring an insured to provide prompt notice of a lawsuit to its insurer.  An insured's non-compliance with that provision gives an insurer a defense to coverage that otherwise exists.  *Beville* never held, nor could it, that an insured was entitled to coverage on matters that are expressly excluded by the policy.  And as we have earlier explained, Travelers is not relying on a coverage defense; it is relying on an exclusion from coverage contained in the policy provision that expressly excludes reimbursement for expenses that an insured unilaterally incurs without the prior consent of the insurer.  That provision states that "no insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." This provision clearly excludes any voluntary payments made by an insured without the insurer's permission.  It is an exclusion from coverage, and there is no dispute that EmbroidMe disregarded it.

Because the CAS cannot resurrect coverage that has been explicitly excluded and because the provision at issue here constitutes such an exclusion,

35

*Beville* is not controlling and EmbroidMe is not entitled to reimbursement of legal expenses that it incurred without the permission of Travelers.

## **CONCLUSION**

We conclude that the CAS does not apply to prevent Travelers from enforcing a provision of the liability insurance policy that excludes EmbroidMe from obtaining reimbursement for attorney's fees it chose to incur prior to requesting Travelers to defend and indemnify it in its pending litigation. We therefore **AFFIRM** the district court.

JORDAN, Circuit Judge, concurring in the judgment.

The Court's construction of Florida's Claims Administration Statute, Fla. Stat. § 627.426, makes sense to me, but it runs counter to the Fourth District's decision in *Nationwide Mut. Fire Ins. Co. v. Beville*, 825 So. 2d 999, 1003-04 (Fla. 4th DCA 2002) (holding that insured's failure to provide proper notice of claim constituted a "coverage defense" under the CAS, and that insurer was required to pay for insured's pre-notice expenses because it did not comply with the CAS). Our cases say that we are bound to follow a decision by a Florida intermediate appellate court unless there is a persuasive indication that the Florida Supreme Court would decide the issue differently, *see, e.g.*, *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002), and I do not think *Beville* is distinguishable.

I would resolve the case solely on the alternative rationale articulated by the Court at the end of the majority opinion. Section IV(2)(d) of the policy provides that "[n]o insured will, *except at that insured's own cost*, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [Travelers'] consent." D.E. 52-1 at 27 (emphasis added). The phrase "except at that insured's own cost" makes this policy language tantamount to a policy exclusion. As I read it, this voluntary payments provision means that the insured is responsible for the costs it incurs (other than for first aid) without the insurer's consent and that no coverage or indemnification is available for such

37

costs.  *See Am. Reliance Ins. Co. v. Perez*, 712 So. 2d 1211, 1212-13 (Fla. 3d DCA 1998) (holding that the same voluntary payments provision precluded coverage where the insured settled a claim without the insurer's consent); *Rolyn Companies, Inc. v. R & J Sales of Texas, Inc.*, 412 F. App'x 252, 255, 2011 WL 320421, at *3 (11th Cir. Feb. 2, 2011) (concluding, under Florida law, that the same voluntary payments provision precluded the insured from recovering repair costs it incurred before seeking consent from the insurer to perform repairs).  *Accord West Bend Mu. Ins. C. v. Arbor Homes LLC*, 703 F.3d 1092, 1096-97 (7th Cir. 2013) (holding, under Indiana law, that the same voluntary payments provision precluded coverage where the insured settled a claim without the insurer's consent); *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 399-400 (5th Cir. 1995) (concluding, under Texas law, that a voluntary payments provision precluded the insurer from being liable for defense costs incurred by the insured prior to tender of claim); *Insua v. Scottsdale Ins. Co.*, 104 Cal. App. 4th 737, 743-44 (2d Dist. 2002) (ruling, under California law, that the same voluntary payments provision typically "bars reimbursement for pre-tender expenses based on the reasoning that until the defense is tendered . . . there is no duty to defend") (internal quotation marks omitted).

38

This is the majority rule.  *See* 3 New Appleman on Insurance Law Library Edition §20.04(3)(b) (LexisNexis 2016) (recognizing, but criticizing, the majority rule).    And because this voluntary payments provision constitutes a policy exclusion, the CAS does not apply.  *See AIU Ins. Co. v. Block Marina Inv., Inc.*, 544 So. 2d 998, 1000 (Fla. 1989).