767 F.2d 810
 TRIZEC PROPERTIES, INC., d/b/a Clearwater Mall Co., Plaintiff,
v.
BILTMORE CONSTRUCTION CO., INC., et al., Defendants,
and
DECKS, INC., OF FLORIDA, Defendant-Third-Party Plaintiff-Appellee,
v.
The HOME INDEMNITY CO., et al., Third-Party Defendants,
and
Liberty Mutual Insurance Company, Third-Party Defendant Appellant.
 No. 84-3215.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 5, 1985.
 
 Kenneth L. Olsen, Tampa, Fla., for third-party defendant-appellant.
 Bruce Harper, Alfred E. Froh, Clearwater, Fla., for defendant-third-party plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before VANCE and ANDERSON, Circuit Judges, and HENLEY*, Senior Circuit Judge.
 HENLEY, Senior Circuit Judge:
 
 
 1
 Trizec Properties Inc. (Trizec) sued several contractors, including Decks, Inc. (Decks), for negligence and breach of contract in the construction of a shopping mall. By third party complaint, Decks, in turn, sued its insurers, one of which is the appellant Liberty Mutual Insurance Company (Liberty). Decks sought to impose a duty to defend and indemnify Decks in the main action. The narrow issue we address here is whether Liberty owes Decks a duty to defend Trizec's suit. We hold that it does and affirm the judgment of the district court.[1]
 
 
 2
 Decks worked as a subcontractor in installing the roof deck on the shopping mall. Trizec's complaint alleges that the mall was constructed "commencing in or about 1971, and ending in or about 1975." Decks' insurers were all on the risk at different times during and after the mall's construction. Liberty was Decks' liability insurer from November 20, 1972 until January 1, 1976. The district court entered partial summary judgment in favor of Decks on the duty to defend issue stating that "the allegations of Plaintiff's Complaint are sufficiently broad to bring the claims against DECKS within potential coverage under the policies issued by the insurors...." Liberty is the only one of the four insurers to appeal this ruling.
 
 
 3
 We begin by stating the general principles of Florida law[2] which govern an insurer's duty to defend. The duty to defend "depends solely on the allegations in the complaint filed against the insured." Tropical Park, Inc. v. United States Fidelity and Guaranty Co., 357 So.2d 253, 256 (Fla. 3d DCA 1978); Coblentz v. American Surety Co., 416 F.2d 1059, 1062 (5th Cir.1969). The complaint must allege facts which fairly bring the case within coverage even though ultimately there may be no liability on the part of the insured. Tropical Park, 357 So.2d at 256. If the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit. Id.; Battisti v. Continental Cas. Co., 406 F.2d 1318, 1321 (5th Cir.1969). The duty to defend is separate and apart from the duty to indemnify and the insurer may be required to defend a suit even if the later true facts show there is no coverage. Klaesen Bros., Inc. v. Harbor Ins. Co., 410 So.2d 611, 612-13 (Fla. 4th DCA 1982); Burton v. State Farm Mutual Auto. Ins. Co., 335 F.2d 317, 321 (5th Cir.1964). All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured, 7C Appleman, Insurance Law & Practice 99-100 (Berdal ed. 1979), and if the complaint alleges facts which create potential coverage under the policy, the duty to defend is triggered. See Tropical Park, 357 So.2d at 256.
 
 
 4
 As stated, Trizec's complaint alleges the mall was constructed from 1971 to 1975. It alleges negligence and breach of express and implied warranties against several contractors, including Decks. Only the negligence allegations are pertinent here since Decks acknowledges that the causes of action for breach of warranty are excluded from coverage. The complaint states that there are defects in the roof deck resulting from Decks' negligent failure to properly install the deck. The complaint further alleges that, as a result of the improper installation, the roof membrane split and leaked, the roof control joints and expansion joints malfunctioned, the flashings and walls leaked, and that pipes and lighting fixtures began to rust. The complaint does not say when these consequential effects of the improper installation actually began to occur. It does allege that the defects "involve latent defects" which were not discovered by plaintiff until their "manifestation" in 1979.
 
 
 5
 The insurance policy is entitled a "Comprehensive General Liability Policy." It provides that Liberty has the right and duty to defend any suit brought against Decks "seeking damages on account of ... property damage, even if any of the allegations of the suit are groundless, false or fraudulent." Its coverage extends to the insured's obligation to pay damages for "property damage ... caused by an occurrence." The policy's definition of "occurrence" states that "occurrence means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Property damage is defined as "physical injury to or destruction of tangible property" occurring during the policy period, or "loss of use of tangible property ... provided such loss of use is caused by an occurrence during the policy period." (All emphasis in original.)
 
 
 6
 The policy is thus an "occurrence" policy as opposed to a "claims made" or "discovery" policy. Both parties acknowledge the applicability of the general rule that the event which triggers potential coverage under an occurrence-type policy is the sustaining of actual damage by the complaining party and not the date of the negligent act or omission which caused the damage.[3] See Aetna Ins. Co. v. State Farm Fire & Cas. Co., 457 So.2d 512, 513 (Fla. 1st DCA 1984); Travelers Ins. Co. v. C.J. Gayfer's & Co., 366 So.2d 1199, 1202 (Fla. 1st DCA 1979); Hertz Corp. v. Pugh, 354 So.2d 966, 969 (Fla. 1st DCA 1978); Prieto v. Reserve Ins. Co., 340 So.2d 1282, 1283 (Fla. 3d DCA 1977) (per curiam). Cf. Commercial Union Ins. Co. v. R.H. Barto Co., 440 So.2d 383 (Fla. 4th DCA 1983) (where court appeared to hold date of negligence triggers coverage), cert. denied, 451 So.2d 850 (Fla.1984). See generally Annot., 37 A.L.R.4th 382, 393 (1985). The language of the policy is consistent with the general rule since it defines occurrence as an accident which results in property damage.[4]
 
 
 7
 Liberty contends that since the complaint alleges that the damage did not "manifest" itself until 1979, and because its coverage ceased on January 1, 1976, it has no duty to defend Trizec's lawsuit. It asserts that the occurrence of the damage can only trigger coverage where it is discovered or has "manifested" itself.
 
 
 8
 We believe that Liberty owes Decks a duty to defend Trizec's lawsuit. The language of the policy itself belies Liberty's assertions.[5] The potential for coverage is triggered when an "occurrence" results in "property damage." There is no requirement that the damages "manifest" themselves during the policy period.[6] Rather, it is the damage itself which must occur during the policy period for coverage to be effective. Here, the actual date that the damage occurred is not expressly alleged, but the language of the complaint, "at least marginally and by reasonable implication," Klaesen Bros., 410 So.2d at 613, could be construed to allege that the damage (cracking and leaking of roof deck with resultant rusting) may have begun to occur immediately after installation, 1971 to 1975, and continued gradually thereafter over a period of time. The complaint's allegations are therefore broad enough to allow Trizec to prove that at least some of the damage occurred during Liberty's policy period, 1972 to 1976. Because the complaint alleges facts "which fairly bring the cause within the coverage of the insurance contract," Tropical Park, 357 So.2d at 256, there is a potential for coverage and Liberty owes Decks a duty to defend the main action.
 
 
 9
 To the extent that Liberty argues that the damage itself did not occur until it "manifested" itself in 1979, such a contention is simply irrelevant to the task at hand. Federal Ins. Co. v. Applestein, 377 So.2d 229, 233 (Fla. 3d DCA 1979) ("the 'actual facts' of the situation are not pertinent" to the duty to defend issue), opinion after remand, 404 So.2d 789 (Fla. 3d DCA 1981). At this stage in the proceedings, we have no way of conclusively ascertaining exactly when the damage occurred. While this question may be answered at trial, at this point our only concern is with the pleadings, not the proof at trial, and it matters not that there ultimately may be no coverage under the policy. We express no opinion on the issue whether Liberty is liable under the policy for any damages Decks may be required to pay. We hold only that the complaint is broad enough to trigger Liberty's duty of defense and do not decide whether there is actual coverage under the policy. The judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable J. Smith Henley, U.S. Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 The Honorable Elizabeth A. Kovachevich, United States District Judge, Middle District of Florida
 
 
 [2]
 It is undisputed that Florida law applies in this diversity action
 
 
 [3]
 Coverage is effective on a "claims made" policy "if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term". 7A Appleman, Insurance Law & Practice 312 (Berdal ed. 1979)
 
 
 [4]
 It is also true in Florida that accrual of a negligence action is measured from the time damages are sustained and "not from the time the full extent of the damages sustained has been ascertained." Carter v. Cross, 373 So.2d 81, 82-83 (Fla. 3d DCA 1979)
 
 
 [5]
 The only case relied upon by Liberty to support its argument is United States Fidelity & Guaranty Co. v. American Ins. Co., 169 Ind.App. 1, 345 N.E.2d 267 (1976). However, the Indiana court in no way deviated from the rule that the time of the occurrence "is not the time the wrongful act was committed but the time when the complaining party was actually damaged." Id. at 270 (emphasis added). The damage in that case was the spalling of bricks in a building. Because this damage was aesthetic rather than structural, the court merely held the date of the damage was the time the spalling was first noticed. Prior to the date that this type of damage becomes apparent, the complaining party has simply suffered no injury. The court did not rule that the occurrence must always be measured from the date of discovery or manifestation of the damage
 
 
 [6]
 In essence, Liberty is attempting to change the present policy into a "claims made" policy where the date of discovery of the damage is relevant. The language of the policy, however, clearly focuses on the date that damage is sustained and not the date it "manifests" itself. We need not and do not decide whether Liberty's theory (that damages must manifest themselves or be discoverable before coverage is triggered) is a correct or incorrect statement of the law in general. We hold only that such a theory is incompatible with the language of the policy at issue here