[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11504
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-21777-KMW

ADDISON INSURANCE COMPANY,

Plaintiff-Appellant,

versus

4000 ISLAND BOULEVARD CONDOMINIUM
ASSOCIATION, INC.,
a not-for-profit corporation, et al.,

Defendants.

WINDSOR METAL SPECIALTIES, INC., a Florida corporation,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(December 28, 2017)

Before HULL, WILLIAM PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

In this declaratory judgment action, plaintiff Addison Insurance Company (the insurer "Addison") appeals from three orders of the district court, which, collectively, declared as a matter of law that insurer Addison was obligated to defend its insured, defendant Windsor Metal Specialties, Inc. ("Windsor"), in an underlying action in Florida state court. Addison argues on appeal that the underlying complaint against Windsor falls outside Windsor's insurance coverage, and that it is entitled to a jury trial on the veracity of certain factual allegations in the underlying complaint. After review, we affirm.

## I.    BACKGROUND

We discuss first the underlying dispute in the Florida state court, and second the relevant proceedings in this declaratory judgment action in the district court.

## A.    The Underlying Florida Action

This dispute arose from a construction project on a high-rise residential condominium building in Florida. In August 2010, non-party 4000 Island Boulevard Condominium Association, Inc. ("Owner Island"), an association of owners of condominiums in the building, contracted with nonparty Poma Construction Corp. (contractor "Poma") to replace the building's aging concrete

2

balcony railings with new aluminum and glass railings. Poma then subcontracted with defendant Windsor to paint the new railings.

Contractor Poma and subcontractor Windsor completed work on February 24, 2012. Poma issued a 10-year limited warranty covering its installation of the railings. Windsor issued a 20-year limited warranty covering the paint job.

In October 2014, Owner Island filed an action in Florida state court against contractor Poma and its subcontractor Windsor, alleging that the new railings were defective and would need to be removed and replaced. Owner Island further alleged that both Poma and Windsor had refused to perform the repair under warranty. Accordingly, Owner Island asserted claims for breach of contract against Poma (Count I), breach of implied warranty against Poma (Count II), and breach of express warranty against Windsor (Count III).

Owner Island's original Florida complaint did not allege that any property damage had resulted from the defective railings, or that any damage would occur when the railings were removed and replaced. However, Owner Island amended its complaint on May 27, 2015, and again on March 16, 2016. In each new version of the complaint, Owner Island added more allegations regarding damage to the surrounding property.

3

In the operative second amended complaint, Owner Island alleged that the defective railing system, including Windsor's defective paint finishes on the railings, caused "damage to other property" such as "the railing post pockets, the balcony concrete slabs and finishes on the balcony concrete slabs." Specifically in connection with Count III, the sole count asserted against Windsor, Owner Island alleged:

> Damage to other property has manifested during the filing of this action including but not limited to other property – concrete balcony surfaces and flooring areas. It is anticipated that the removal and replacement of the railing system will cause damage to other property, including but not limited to the concrete balconies, surfaces on the concrete balconies and other areas requiring substantial repairs. The defective railing system, including the defective paint finish, has caused and will continue to cause damage to other property including but not limited to the railing post pockets, the balcony concrete slabs and finishes on the balcony concrete slabs. Defendant, Poma, utilized the services of a subcontractor, Windsor, to fabricate the paint finishes on the railings that were delivered and installed at the project. Because of the defective condition of the railing system caused by Poma's subcontractor, Windsor, damage has occurred to other property, including but not limited to the railing post pockets, the balcony concrete slabs and finishes on the balcony concrete slabs.

## B.    The Declaratory Judgment Action in the District Court

On May 11, 2015—that is, after Owner Island filed the original complaint in the Florida action, but before Owner Island amended its complaint for the first time—plaintiff insurer Addison commenced this action for declaratory judgment in

4

the district court.[1]  In sum, insurer Addison sought a declaration that it was not obligated to defend any party, including its insured, Windsor, in the Florida action.

As an exhibit to its declaratory judgment complaint, Addison attached the commercial general liability policy issued to Windsor (the "Policy").[2]  The Policy provided coverage for "property damage" caused by an "occurrence":

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> . . . .
>
> b. This insurance applies to "bodily injury" and "property damage" only if:

---

[1]The insurer Addison originally named Windsor, Poma, and Owner Island as defendants in the declaratory judgment action.  However, the district court subsequently dismissed Poma and Owner Island from the action, after adopting two Joint Stipulations from the parties agreeing to the dismissal of those defendants.  In its October 2016 dismissal orders, the district court ordered that insurer Addison was not obligated to defend Poma in the Florida action, and that Owner Island would be bound by all coverage determinations in the declaratory judgment action.  Because Addison and Windsor are the only remaining parties to the declaratory judgment action and the only parties to this appeal, we limit our discussion to facts and proceedings relevant to those parties, except where context or clarity requires otherwise.

[2]The insurer Addison actually issued three policies, each providing one year of coverage.  Because each policy included the same relevant terms, we refer to them collectively as the "Policy."

5

(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

The Policy provided that Windsor's coverage did not apply to, among other things, property damage to Windsor's own work product or to that particular property that must be repaired because Windsor's work "was incorrectly performed on it." The Policy listed the following coverage exclusions:

j.    Damage To Property

"Property damage" to:
(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . . .

k.    Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

l.    Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

. . . .

m.    Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

6

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

Finally, the Policy contained the following relevant definitions:

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . . .

17. "Property damage" means:
a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that cause it; or
b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

. . . .

21. "Your product":
a.    Means:
       (1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
              (a) You;
              (b) Others trading under your name; or
              (c) A person or organization whose business or assets you have acquired.

       . . . .

b.    Includes:

(1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product."

. . . .

22. "Your work":
a.    Means:
(1)    Work or operations performed by you or on your behalf; and
(2)    Materials, parts or equipment furnished in connection with such work or operations.
b.    Includes:
(1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work."

The insurer Addison amended its declaratory judgment complaint on June 8, 2015, and again on September 11, 2015.  In Addison's operative second amended complaint, Addison sought the following declarations: (1) Owner Island's first amended complaint (dated May 27, 2015), which was the operative Florida complaint at the time, did not allege "property damage" caused by an "occurrence" under the Policy; (2) the damages alleged by Owner Island were excluded from coverage under the Policy, due to one or more coverage exclusions; and (3) Addison had no duty to defend or indemnify any insured or other party in the Florida action.

## C.    Addison's Motion for Summary Judgment

In June 2016, after Owner Island filed the operative second amended complaint in the Florida state action, Addison moved for summary judgment in the

federal declaratory judgment action. Addison argued that because Owner Island had sued Windsor for breach of warranty, rather than for property damage, Windsor was not covered under the Policy. Addison further argued that Owner Island's allegations of property damage were unsupported by evidence, and were thus insufficient to create an issue of fact that would defeat summary judgment.

Windsor opposed summary judgment.[3] Windsor argued that a genuine issue of material fact existed as to whether the damage alleged in Owner Island's operative complaint constituted "property damage" to which no Policy exclusion applied. To support this argument, Windsor relied on an affidavit from an employee of Owner Island, together with accompanying photographs, which Owner Island had submitted in support of its own opposition to summary judgment. The affidavit described the photos as showing "railing failure and damage to the areas where the railings were installed."

On September 22, 2016, the district court denied Addison's motion for summary judgment. The district court compared the allegations in Owner Island's operative complaint with the language of the Policy, and concluded that Addison had not shown, as a matter of law, that it had no duty to defend Windsor in the Florida action. In a footnote, the district court pointed to "a number of material disputes between the Parties regarding the relationship between the allegations in

---

[3]Contractor Poma and Owner Island each filed a separate opposition to summary judgment.

the complaint and the insurance policy at issue." The district court continued: "Though these factual disputes go primarily to Addison's duty to indemnify, the Court notes that some of them—such as Poma's coverage under the policy and potential exclusions for the damage—could also implicate Addison's duty to defend."

The district court further concluded that the issue of Addison's duty to indemnify Windsor would not ripen unless and until Windsor was actually held liable in the underlying Florida action.

Having denied Addison's motion for summary judgment, the district court scheduled a jury trial on the issue of Addison's duty to defend, which the district court set to begin on December 12, 2016.

## D.    Windsor's Motion for Clarification

As the declaratory judgment action proceeded toward trial, the district court dismissed contractor Poma and Owner Island from the case, pursuant to joint stipulations by the parties. Shortly after Poma was dismissed, Windsor filed a motion for clarification of the district court's order denying Addison's motion for summary judgment.

In its motion for clarification, Windsor noted that the district court, in denying summary judgment, had identified disputed issues of material fact. Windsor now asked the district court to clarify that those disputed facts had

pertained only to Poma.  Windsor argued that, because Poma had since been dismissed from the action, those disputed facts "no longer exist[ed]."  As there were no disputed facts pertaining to Windsor or Addison—the only remaining parties—Windsor asked the district court to declare as a matter of law that Addison had the duty to defend Windsor in the Florida state court action.  Windsor described this conclusion as a "corollary" to the district court's denial of Addison's motion for summary judgment on the same issue.

At a November 1, 2016 hearing on Windsor's motion for clarification and other pretrial motions, the district court indicated its intention to grant the motion for clarification, and, accordingly, removed the declaratory judgment action from the trial calendar.  Addressing Addison's argument that it was entitled to a trial on the factual basis for Owner Island's allegations, the district court advised:

> [W]hat you are talking about is not necessarily a query as to whether the policy requires you to defend when a complaint advances certain allegations.
>
> What you are alleging—or at least it seems like you are suggesting—fraud, absolute fraud, which is a different situation than what is ordinarily contemplated in a dec action.

In response, Addison's counsel assured the district court that Addison was not contending that the allegations were fraudulent: "I apologize if I indicated that what we were accusing them of rises to the level of fraud; I would never want to saddle my client with that burden to establish fraud."

11

On December 23, 2016, the district court entered a written order granting Windsor's motion for clarification.  The district court concluded that a <u>sua sponte</u> grant of summary judgment in favor of Windsor was appropriate, because "the underlying complaint in the present case clearly alleges facts that would bring the occurrence within the ambit of coverage under Addison's policy."  The district court left undisturbed its prior conclusion that a determination about Addison's duty to indemnify was premature until the underlying Florida state court action concluded.  To that end, the district court stayed the declaratory judgment action pending resolution of the Florida action.

**E.    Addison's Motion for Reconsideration or Certification**

On January 19, 2017, insurer Addison moved the district court to reconsider its order granting the insured Windsor's motion for clarification.  In the alternative, Addison requested that the district court "certify this matter for appeal—to the extent this Court's ruling is deemed nonfinal and not otherwise subject to appeal as a matter of right—pursuant to Federal Rule of Civil Procedure 54(b) and/or 28 U.S.C. [§] 1292(b)."

On March 8, 2017, the district court granted in part and denied in part Addison's motion.  The district court declined to reconsider its prior orders, but agreed to certify, under Rule 54(b), its order on the motion for clarification "as a partial final judgment in favor of Windsor on Addison's duty to defend."

12

**F.    Addison's Appeal**

Addison now appeals from three orders of the district court: (1) the September 22, 2016 order denying Addison's motion for summary judgment; (2) the December 23, 2016 order granting Windsor's motion for clarification; and (3) the March 8, 2017 order denying Addison's motion for reconsideration.

## II.    JURISDICTION

Before turning to the merits, we address our jurisdiction to consider this appeal.  See Reaves v. Sec'y, Fla. Dep't. of Corr., 717 F.3d 886, 905 (11th Cir. 2013) (the court of appeals has an obligation to review sua sponte whether it has jurisdiction at any point in the appellate process).

Our jurisdiction is ordinarily limited to final orders of the district courts.  28 U.S.C. § 1291.  However, we have jurisdiction to review nonfinal orders under certain circumstances.  One such circumstance is our jurisdiction to review an order granting or denying an injunction.  28 U.S.C. § 1292(a)(1).  We have held that a district court order granting an insured's motion for partial summary judgment, and ordering an insurer to pay the insured's defense costs in underlying litigation, is an appealable injunction under § 1292(a)(1).  Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Sahlen, 999 F.2d 1532, 1535 (11th Cir. 1993).

Because the district court's orders here are reviewable under § 1292(a)(1), we need not consider the propriety of the district court's purported certification

under Rule 54(b).  See Ebrahimi v. City of Huntsville Bd. of Educ., 114 F.3d 162, 165 (11th Cir. 1997) (noting that even when the district court makes the required express determinations for a Rule 54(b) certification, we must review the propriety of the certification sua sponte because it implicates our jurisdiction); see also Grayson v. Warden, 869 F.3d 1204, 1212 n.10 (11th Cir. 2017) (finding that a district court's characterization of an order as being certified under Rule 54(b) is not dispositive, and that an order certified as appealable under Rule 54(b) may be appealable on another basis).

Having concluded that we have jurisdiction over this appeal, we now turn to the merits.

### III.    DISCUSSION

### A.    Standard of Review

We review a district court's grant of summary judgment de novo.  Hegel v. First Liberty Ins. Corp., 778 F.3d 1214, 1219 (11th Cir. 2015).  A district court properly grants summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Id.; Fed. R. Civ. P. 56(a).  A district court also possesses the authority to grant summary judgment sua sponte, so long as the losing party was on notice that it had to come forward with all of its evidence.  Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S. Ct. 2548, 2554 (1986).

We review <u>de novo</u> a district court's interpretation of an insurance contract. <u>Hegel</u>, 778 F.3d at 1219.

## B.    The Law

The parties have stipulated that Florida law applies to all substantive issues. Under Florida law, the determination of an insurer's duty to defend falls under the so-called "eight corners rule," the name of which refers to the four corners of the insurance policy and the four corners of the underlying complaint. <u>Mid-Continent Cas. Co. v. Royal Crane, LLC</u>, 169 So. 3d 174, 182 (Fla. Dist. Ct. App. 2015). Put simply, the eight corners rule provides that an insurer's duty to defend its insured against a legal action "arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." <u>Jones v. Fla. Ins. Guar. Ass'n, Inc.</u>, 908 So. 2d 435, 442-43 (Fla. 2005).

If the complaint alleges facts that bring the injury within the policy's coverage, the insurer must defend as a matter of law, "regardless of the merits of the lawsuit." <u>State Farm Fire & Cas. Co. v. Steinberg</u>, 393 F.3d 1226, 1230 (11th Cir. 2004) (applying Florida law). Indeed, the duty to defend attaches "even if the allegations in the complaint are factually incorrect or meritless." <u>Jones</u>, 908 So. 2d at 443. Moreover, the insurer must defend the entire lawsuit, even if the complaint "alleges facts partially within and partially outside the scope of coverage." <u>Trizec Prop., Inc. v. Biltmore Constr. Co., Inc.</u>, 767 F.2d 810, 811-12 (11th Cir. 1985)

15

(applying Florida law).  Any doubts regarding the duty to defend are resolved in favor of the insured.  Jones, 908 So. 2d at 443.

This Court has recognized a limited exception to the eight corners rule, in which a court may consider extrinsic facts "if those facts are undisputed, and, had they been pled in the complaint, they clearly would have placed the claims outside the scope of coverage."  Stephens v. Mid-Continent Cas. Co., 749 F.3d 1318, 1323 (11th Cir. 2014).  This exception, however, is limited to "exceptional cases in which courts have crafted an equitable remedy when it is manifestly obvious to all involved that the actual facts placed the claims outside the scope of coverage."  Id. (quotation omitted).

The Florida Supreme Court has shed additional light on the "property damage" and "occurrence" terms in commercial general liability insurance policies.  The term "property damage" does not include an insured's faulty workmanship, but it does include physical injury to otherwise nondefective property that results from that faulty workmanship.  U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So. 2d 871, 889 (Fla. 2007).  Damage to otherwise nondefective property that is caused by faulty workmanship constitutes an "occurrence," so long as the faulty workmanship was unintentional.  Id. at 888.

## C.    Analysis of Coverage

Here, Windsor's Policy required the insurer Addison to defend its insured Windsor against any suit seeking damages arising from "property damage," which included "[p]hysical injury to tangible property," so long as that property damage was caused by an "occurrence," which included "continuous or repeated exposure to substantially the same general harmful conditions."  The Policy excused Addison from defending any action arising from property damage to Windsor's own work product, or to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."  For purposes of this exclusion, Windsor's work product is the paint finishes on the railings, and the railings are the particular part of the property on which Windsor's work was allegedly performed incorrectly.

The operative underlying complaint alleged that "[t]he defective railing system, including the defective paint finish, has caused and will continue to cause damage to other property . . . including but not limited to the railing post pockets, the balcony concrete slabs and finishes on the balcony concrete slabs."

Comparing the Policy with this complaint, the alleged damage to the railing post pockets and balcony concrete slabs was "property damage," caused by the "occurrence" of Windsor's allegedly faulty workmanship.  J.S.U.B., 979 So. 2d at 888-89.  Windsor's work consisted only of painting the balcony railings, and the

17

allegedly damaged property included the balcony concrete slabs and the finishes on them.  The coverage exclusions for repairs to Windsor's own work, or the railing parts on which Windsor's work was incorrectly performed, therefore do not vitiate Addison's duty to defend Windsor.

The operative complaint fairly alleges facts that bring the action within Windsor's Policy.  There are no "manifestly obvious" but unalleged facts that would place the complaint outside of coverage.  Stephens, 749 F.3d at 1323.  Under the eight corners rule, Addison's duty to defend is triggered.  Jones, 908 So. 2d at 442-43.  Even if some of the alleged damage was also to Windsor's own work product and the railings, which would fall within one or more coverage exclusions, Addison would be required to defend Windsor.  Trizec, 767 F.2d at 811-12.

## D.    Duty to Defend

Addison argues that the relevant allegations in Owner Island's complaint are unsupported by evidence, and that this entitles Addison to a jury trial on the duty to defend issue.  Notably, however, Addison does not contend that Owner Island's allegations are untrue and fraudulent.  Addison's counsel disavowed that argument at the hearing on the motion for clarification.  Rather, Addison argues that more factual verification is required before Owner Island may be allowed to "plead into coverage."  But this is contrary to the eight corners rule.  Where, as here, the

18

complaint "alleges facts that fairly and potentially bring the suit within policy coverage," a district court properly applies the eight corners rule.   Jones, 908 So. 2d at 442-43 (emphasis added).  Even if the allegations of the complaint are ultimately found to be without merit in the Florida state court action, Addison must defend the lawsuit until that point.  Id. at 443.

Addison emphasizes the Florida Supreme Court's decision in Higgins v. State Farm Fire Ins. and Cas. Co., 894 So. 2d 5 (Fla. 2004), but that decision does not help Addison.  In Higgins, the Florida Supreme Court, answering a certified question from a lower state appellate court, held that Florida's declaratory judgment statutes "authorize declaratory judgments in respect to insurance policy indemnity coverage and defense obligations in cases in which it is necessary to resolve issues of fact in order to decide the declaratory judgment action."  Higgins, 894 So. 2d at 15.  The Florida Supreme Court concluded, in other words, that a declaratory judgment action does not become unavailable to an insurer merely because some issue of fact is disputed.  Id.

Higgins in no way abrogated the normal principles of summary judgment. Nor did it hold, as Addison contends, that any time an insurer disputes a fact, the insurer is "entitled to a determination of such facts . . . particularly where the underlying allegations at issue appear baseless."  To the contrary, Higgins expressly reaffirmed the eight corners rule: "[A]n insurer's obligation to defend is

19

determined solely by the complaint if suit has been filed." Id. at 10. And the very next year, the Florida Supreme Court reaffirmed the eight corners rule again in Jones. 908 So. 2d at 442-43. We find no reason to disturb the district court's application of this settled Florida law.

## IV.  CONCLUSION

Based on the foregoing reasons, we conclude that the district court did not err in granting summary judgment in favor of Windsor on the issue of Addison's duty to defend Windsor in the underlying Florida state court action. We therefore affirm the orders on appeal.

**AFFIRMED.**

20