[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13040
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cv-00021-JES-CM

SOUTHERN-OWNERS INSURANCE COMPANY,

Plaintiff - Counter
Defendant - Appellee,

versus

MAC CONTRACTORS OF FLORIDA, LLC,
d.b.a. KJIMS Construction,

Defendant - Counter
Claimant - Appellant,

PAUL S. DOPPELT,
Trustee of Paul S. Doppelt Revocable Trust
dated 12/08/90, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 11, 2019)

Before MARCUS, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

In this insurance-coverage dispute, Southern-Owners Insurance Company ("Southern-Owners") sought a declaratory judgment that it owes no duty to defend or indemnify its insured, MAC Contractors of Florida, LLC, doing business as KJIMS Construction ("KJIMS"), against a state-court lawsuit brought by Paul Doppelt and Deborah Doppelt as trustees of their respective trusts (the "Doppelts").

KJIMS had contracted with the Doppelts to serve as the general contractor of a custom-built residence in Marco Island, Florida. Problems arose between KJIMS and the Doppelts after construction began, and KJIMS eventually left the job site before completing the project and before the issuance of a certificate of occupancy. After serving KJIMS with a notice of defects, *see* Fla. Stat. § 558.004, the Doppelts sued KJIMS in state court alleging myriad construction defects and damages at the project. Among other things, the Doppelts claimed "damage to wood floors and the metal roof" that KJIMS had failed to remediate despite its assurances that the damages would be repaired.

Southern-Owners issued two commercial general liability ("CGL") insurance policies to KJIMS covering the time frame relevant to this case, October 2014 to October 2016. Southern-Owners initially agreed to defend KJIMS against the Doppelts' lawsuit, but it later withdrew the defense and then filed this action for

2

declaratory relief.    The parties filed cross-motions for summary judgment. Southern-Owners argued that an exclusionary provision—the "Your Work" exclusion—clearly applied to bar coverage for the Doppelts' suit.  The district court agreed and granted summary judgment to Southern-Owners.  KJIMS now appeals.

We review *de novo* the district court's grant of summary judgment, applying the same standards as the district court.  *Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1163 (11th Cir. 2017).  We also review *de novo* the district court's interpretation of contract language.  *Id.* at 1164.

In this diversity action, we apply the substantive law of the forum state, which is Florida.  *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1148 (11th Cir. 2010).  Under Florida law, an insurer's duty to defend is distinct from and broader than its duty to indemnify and depends solely on the factual allegations in the complaint.  *Id.* at 1148–49.

For the duty to defend to arise, the underlying allegations must "fairly bring the case within the scope of coverage."  *State Farm Fire & Cas. Co. v. Tippett*, 864 So.2d 31, 35–36 (Fla. Dist. Ct. App. 2003).  "If the complaint alleges facts partially within and partially outside the scope of coverage, the insurer is obligated to defend the entire suit."  *Trizec Props., Inc. v. Biltmore Constr. Co., Inc.*, 767 F.2d 810, 811–12 (11th Cir. 1985).  Any doubt about whether the insurer owes a duty to defend must be resolved against the insurer and in favor of the insured.  *Id.* at 812.

3

Furthermore, "[b]ecause they tend to limit or avoid liability, exclusionary clauses are construed more strictly than coverage clauses." *Category 5 Mgmt. Grp., LLC v. Companion Prop. & Cas. Ins. Co.*, 76 So.3d 20, 23 (Fla. Dist. Ct. App. 2011). Nevertheless, if the complaint clearly shows "the applicability of a policy exclusion, the insurer has no duty to defend." *Keen v. Fla. Sheriffs' Self-Insurance Fund*, 962 So.2d 1021, 1024 (Fla. Dist. Ct. App. 2007)

The CGL policies at issue provided coverage for damages due to "property damage" caused by an "occurrence," which is defined as an "accident." A "Your Work" exclusionary provision excluded coverage for "'[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"

Each of the three keys terms in the exclusion—"property damage," "your work," and "products-completed operations hazard"—is defined in the policy. "Property damage" is defined as

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

The next relevant term, "your work," is defined as

(1) Work or operations performed by you or on your behalf; and

4

(2)    Materials, parts or equipment furnished in connection with such work or operations.

Finally, "products-completed operations hazard," is defined in this way:

a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)    Products that are still in your physical possession; or

(2)    Work that has not yet been completed or abandoned. However "your work" will be deemed completed at the earliest of the following times:

(a)    When all of the work called for in your contract has been completed.

(b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

The district court concluded that Southern-Owners had no duty to defend— assuming *arguendo* the Doppelts' claims were otherwise covered—because the Your Work exclusion clearly applied.  The court found that the Your Work exclusion "unambiguously denies coverage for property damage in the event that the insured

5

abandons or does not complete its work, which is what is alleged to have occurred in this case."

KJIMS argues that the district court erred because the underlying complaint is silent as to the timing of damages and can reasonably be construed to allege "property damage" occurring during ongoing operations—that is, before KJIMS abandoned the project. In KJIMS's view, property damage occurring before the work is "completed" or "abandoned" is not included in the "products-completed operations hazard" and, as a result, falls outside the Your Work exclusion. That's because the Your Work exclusion applies to only property damage "included in the 'products-completed operations hazard.'"

For its part, Southern-Owners agrees with KJIMS that the Your Work exclusion does not apply to property damage caused during ongoing operations. We do, too. But Southern-Owners argues that summary judgment was still appropriate for at least three reasons. None is persuasive.

First, Southern-Owners contends that KJIMS failed to preserve the argument that the underlying allegations are unclear as to the timing of the damages. Not so.

KJIMS preserved its argument below. In its summary-judgment filings, KJIMS contended that "in neither Underlying Complaint do the Doppelts allege the timeframe for which the damages incurred," that "[d]amages to hardwood floors, roofing, granite, among others, most certainly occurred during the course of the

6

Project," and that such damages were not included in the "products-completed operations hazard," thus creating a potential for coverage. Because these are the same contentions it makes before this Court, we reject Southern-Owners' contention that KJIMS raised a new issue on appeal.

Second, Southern-Owners maintains that the underlying amended complaint cannot reasonably be construed to present a claim for damages that occurred during ongoing operations. We disagree.

"Property damage occurs when the damage happens, not when the damage is discovered or discoverable." *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1247 (11th Cir. 2015) (interpreting nearly identical policy language). And where the underlying allegations, even though silent as to the timing of damages, can be reasonably construed to allege property damage that occurred during the policy period, "there is a potential for coverage." *Trizec Props.*, 767 F.2d at 813.

Here, although the underlying allegations are silent as to the timing of the damages, the allegations can be reasonably construed to allege damages that occurred during ongoing operations. *See id.* In particular, the Doppelts alleged "damage to wood floors and the metal roof" that KJIMS had failed to remediate despite its assurances that the damages would be fixed. It is reasonable to infer from this allegation that KJIMS had promised to remediate the damage to the wood floors and metal roof before it abandoned the project. Construing the Your Work exclusion

7

narrowly and resolving all doubts in favor of KJIMS, we conclude that the underlying allegations can fairly be construed to allege damages during ongoing operations. *See id.* at 811–12; *Category 5*, 76 So.3d at 23.

In its discussion of the timing of damages, Southern-Owners appears to question whether the Doppelts actually sought recovery for "property damage" within the meaning of the policy. *Cf. U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So.2d 871, 889 (Fla. 2007) (recognizing the "difference between a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage,' and a claim for the costs of repairing damage caused by the defective work, which is a claim for 'property damage'"). Southern-Owners asserts that the Doppelts simply allege "construction defects," which are not claims for "property damage."

But that's an issue largely separate from the applicability of the "Your Work" exclusion. If the Doppelts did not allege "property damage," there is no coverage under the CGL policies, regardless of any exclusionary provision or the timing of the damages. The district court, however, did not resolve this preliminary coverage issue, and instead assumed without deciding that coverage was triggered under the policy—that is, that the Doppelts sought recovery for "property damage." Because this issue was not considered below, we decline to address it for the first time on

appeal.[1]  *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 & n.4 (11th Cir. 2001) (noting our preference for the district court to address issues in the first instance).

Finally, and for similar reasons, we decline Southern-Owners's request to affirm the district court's judgment on other grounds.  Southern-Owners contends that two other exclusions apply to bar coverage.  But it did not move for summary judgment on the basis of these exclusions, nor did the district court address these exclusions in its summary-judgment order.  We therefore decline to consider these arguments without prejudice to their being raised, as appropriate, on remand.

For these reasons, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**

---

[1] Even if Southern-Owners is correct that claims solely for construction defects or faulty workmanship necessarily arise from completed operations, characterizing the Doppelts' claims in this way seems no different than saying that they were not claims for "property damage" under the CGL polices and Florida law.  We therefore decline to resolve this issue at this time.  We note, however, that the district court did not, as KJIMS suggests, resolve the coverage issue in its favor. The court simply assumed coverage *arguendo* and then proceeded to address the applicability of the Your Work exclusion.  It made no ruling, express or implied, that the Doppelts alleged "property damage" within the meaning of the CGL policies.