[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10840
Non-Argument Calendar
_____

D.C. Docket No. 2:18-cv-00021-JES-MRM

SOUTHERN-OWNERS INSURANCE
COMPANY,

Plaintiff - Counter Defendant
Appellee,

versus

MAC CONTRACTORS OF FLORIDA, LLC,
d.b.a. KJIMS Construction,

Defendant - Counter Claimant
Appellant,

PAUL S. DOPPELT,
Trustee of Paul S. Doppelt Revocable
Trust dated 12/08/90, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(July 29, 2020)

Before ROSENBAUM, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

When several problems arose during the construction of a custom residence, the property owners sued the general contractor, MAC Contractors of Florida, LLC, doing business as KJIMS Construction ("KJIMS"), for damages. KJIMS asked its commercial liability insurer, Southern-Owners Insurance Company ("Southern-Owners") to defend it, but after initially agreeing to do so, Southern-Owners withdrew the defense and then filed this lawsuit seeking a declaration that it owed no duty to defend or indemnify KJIMS. The district court determined that Southern-Owners had no duty to defend because the complaint against KJIMS did not allege "property damage" within the meaning of the insurance policy or Florida law. We disagree and, accordingly, vacate and remand for further proceedings.

**I.**

On December 19, 2014, KJIMS entered into a contract with Paul and Deborah Doppelt, as trustees of their respective trusts, to serve as the general contractor for

the construction of a custom residence in Marco Island, Florida. An exhibit to the contract outlined various specifications for the residence.

Problems arose between KJIMS and the Doppelts after construction began, and KJIMS eventually left the job site before completing the project and before the issuance of a certificate of occupancy. After serving KJIMS with a notice of defects, *see* Fla. Stat. § 558.004, the Doppelts sued KJIMS in state court in August 2016. In the operative amended complaint, they alleged, among other things, that KJIMS and its subcontractors had left the residence "replete with construction defects."

In the Doppelts' notice of defects, which the amended complaint incorporated by reference, the claimed "defects" included the following: "[r]epair loose, broken or chipped pavers in driveway and walkways and install edge restraints"; "[r]epair underside of lap siding – inconsistent paint finish at bottom of boards"; "[r]epair chatter marks on T&G ceilings"; "repair damage to all exterior doors" and "[r]epair all pocket doors"; "[r]eplace damaged top stair tread"; "[r]emedy damage to hardwood floors, includ[ing] damage resulting from use of blue tape and dirt"; "[r]epair metal roof dents, scratches and hems"; "[c]lean wall and ceiling paint on cabinets"; "[r]emove paint spots on baseboards throughout the house"; "[r]emedy scratches in granite"; and "[p]atch and paint all holes in ceilings and walls and twin holes in exterior hardi plank." The Doppelts sought to recover damages for "having

3

to repair and remediate all defective work performed by KJIMS," among other things.

At all relevant times, KJIMS was insured by a commercial general liability ("CGL") insurance policy issued by Southern-Owners.[1]  KJIMS tendered the Doppelts' lawsuit to Southern-Owners, which initially agreed to defend KJIMS but later withdrew the defense and filed this lawsuit in November 2017 seeking a declaration that it owed no duty to defend or indemnify KJIMS.

On cross-motions, the district court granted summary judgment to Southern-Owners.  The court concluded that Southern-Owners owed KJIMS no duty to defend against the Doppelts' lawsuit based on a policy exclusion for "Damage to Your Work."  We vacated that decision on appeal, concluding that the underlying complaint could fairly be construed to allege damages that fell outside the exclusion. *See Southern-Owners Ins. Co. v. MAC Contractors of Fla., LLC*, 768 F. App'x 970, 973–74 (11th Cir. 2019).  In remanding, we noted that the court had not addressed whether the Doppelts alleged "property damage" within the meaning of the CGL policy, though we declined to address that issue for the first time on appeal. *Id.*

---

[1] Southern-Owners issued two commercial general liability policies to KJIMS (each covering one year of the period between October 2014 and October 2016), which for our purposes are materially identical.  Because it does not matter to the result which policy applies, we refer to both policies as a singular "policy."

On remand, the district court again granted summary judgment to Southern-Owners, this time concluding that the underlying complaint did not allege "property damage" within the meaning of the CGL policy. The court reasoned that the underlying complaint did not allege any damage beyond the faulty workmanship or defective work, which did not qualify as "property damage" under Florida law.

## II.

We review *de novo* the district court's grant of summary judgment, applying the same standards as the district court. *Southern-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1163 (11th Cir. 2017). We also review *de novo* the district court's interpretation of contract language. *Id.* at 1164.

Under Florida law, which applies in this diversity case, an insurer's duty to defend "is determined solely from the allegations" in the "most recent amended pleading" against the insured, "not by the true facts of the cause of action against the insured, the insured's version of the facts or the insured's defenses." *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). "[I]f the complaint alleges facts which create potential coverage under the policy, the duty to defend is triggered." *Trizec Props., Inc. v. Biltmore Constr. Co., Inc.*, 767 F.2d 810, 812 (11th Cir. 1985). Any doubt about whether the insurer owes a duty to defend must be resolved against the insurer and in favor of the insured. *Id.* Thus, if "the language of the complaint, at least marginally and by reasonable implication, could

5

be construed" to create potential coverage under the policy, the insurer owes a duty to defend. *Id.* at 813 (quotation marks omitted). In other words, an insurer is "required to offer a defense in the underlying action unless it [is] certain that there [is] no coverage for the damages sought." *Carithers v. Mid-Continent Cas. Co.*, 782 F.3d 1240, 1246 (11th Cir. 2015).

KJIMS maintains that the Florida Supreme Court's two decisions, *United States Fire Insurance Co. v. J.S.U.B., Inc.*, 979 So. 2d 871 (Fla. 2007), and *Auto-Owners Insurance Co. v. Pozzi Window Co.*, 984 So. 2d 1241 (Fla. 2008), govern this case and dictate that there was a duty to defend under the CGL policy. While noting that this Court interpreted these decisions narrowly in *Amerisure Mutual Insurance Co. v. Auchter Co.*, 673 F.3d 1294 (11th Cir.2012), KJIMS contends that the dissenting opinion in *Auchter* more accurately reflects Florida law. KJIMS also asserts that, even under *Auchter*, there is still potentially "property damage" within the scope of the CGL policy. We begin our analysis with the relevant law.

## A.

In *J.S.U.B.*, the Florida Supreme Court addressed whether a subcontractor's defective soil preparation, which caused structural damage to several homes, had caused "property damage" within the meaning of a standard CGL policy. *J.S.U.B.*, 979 So. 2d at 875, 889. In concluding that the structural damage was "property damage," the court drew a distinction between "a claim for the costs of repairing or

6

removing defective work, which is not a claim for 'property damage,' and a claim for the costs of repairing damage caused by the defective work, which is a claim for 'property damage.'" *Id.* at 889. Thus, "faulty workmanship or defective work that has damaged the otherwise nondefective completed project has caused 'physical injury to tangible property' within the plain meaning of the definition in the policy." *Id.* But "[i]f there is no damage beyond the faulty workmanship or defective work, then there may be no resulting 'property damage.'" *Id.* Because the claim in that case was "for repairing the structural damage to the completed homes caused by the subcontractor's defective work"—not for "the cost of repairing the subcontractor's defective work"—it was covered as "property damage." *Id.* at 900.

Then, in *Pozzi Window*, the Florida Supreme Court considered whether "property damage" resulted from a subcontractor's defective installation of custom windows. *See Pozzi Window*, 984 So. 2d at 1247–48. The court reiterated the distinction drawn in *J.S.U.B.*, explaining it in these terms: "In essence, the mere inclusion of a defective component, such as a defective window or the defective installation of a window, does not constitute property damage unless that defective component results in physical injury to some other tangible property." *Id.* at 1248. A claim in which the sole damages are for replacement of a defective component or correction of faulty installation is not a claim for "property damage." *Id.* But if the claim is for the cost of repairing damage caused by defective work—*e.g.*, "if the

7

claim is for the repair or replacement of windows that were not initially defective but were damaged by the defective installation"—then there is physical injury to tangible property and therefore "property damage." *Id.* at 1249. The court ultimately did not resolve whether the windows were covered, however, because the record contained a factual issue—whether the "defective work" was limited to the faulty installation or whether the windows themselves were also defective—that the court said was "determinative of the outcome." *Id.*

We interpreted these cases in *Auchter*, which is binding on us here. *See EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co.*, 845 F.3d 1099, 1105 (11th Cir. 2017) ("[W]hen we have issued a precedential decision interpreting that state law, our prior precedent rule requires that we follow that decision, absent a later decision by the state appellate court casting doubt on our interpretation of that law."). In *Auchter*, a subcontractor negligently installed barrel roof tiles on an inn, causing them to dislodge in high winds and damage other tiles or become lost, and requiring total reconstruction of the roof. *Auchter*, 673 F.3d at 1296–97. The plaintiff argued that the defective installation of tiles caused property damage to the roof. *Id.* at 1307–08.

In rejecting this argument, we interpreted *J.S.U.B.* as holding that there is no coverage for "property damage" "[i]f there is no damage beyond the faulty workmanship, i.e., unless the faulty workmanship has damaged some 'otherwise

8

nondefective' component of the project." *Id.* at 1306 (quotation marks omitted). We further stated that, under *Pozzi Window*, "if a subcontractor is hired to install a project component and, by virtue of his faulty workmanship, installs a defective component, then the cost to repair and replace the defective component is not 'property damage.'" *Id.* "In other words, unless th[e] defective component results in physical injury to some other tangible property, i.e., other than to the component itself, there is no coverage." *Id.* at 1306–07 (quotation marks omitted).

Reasoning that the "defective component" at issue in *Auchter* was the "roof *as a whole*," not the "roofing tiles themselves," we concluded that there was no "property damage" because the defective roof had not "resulted in physical injury to some other tangible property." *Id.* at 1308 (emphasis in original) (quotation marks omitted). Because the plaintiff simply sought to remedy the "the defect itself"—the defective roof—and "ha[d] never claimed . . . damage to any component of the Inn other than the roof itself," the claim was not for "property damage." *Id.* at 1309–10. Rather, we concluded, the "claim is . . . simply a claim for the cost of repairing the subcontractor's defective work." *Id.* at 1307. Although the defective work required "total reconstruction" of the roof, we found that the damage to individual tiles, which we described as "simply the materials used to construct the defective component," were "irrelevant to the 'property damage' determination." *Id.* at 1308. Because the

9

plaintiff's "only alleged damage is the defect itself," there was no "property damage" "under the language of the CGL [policy] or Florida law." *Id.* at 1309.

Then-Chief Judge Ed Carnes dissented, criticizing the majority for misinterpreting *Pozzi Window*. *See id.* at 1310–13 (Carnes, C.J., dissenting). According to Judge Carnes, "The *Pozzi Window* formula is: non-defective components damaged by defective installation equals physical injury to tangible property, which is property damage." *Id.* at 1312. And in *Auchter*, because the roofing tiles were not defective before installation but were damaged by defective installation—resulting in the total loss of all original tiles, which had been bought by the plaintiff—there was "property damage" to the tiles just like there was "property damage" to the windows in *Pozzi Window*. *Id.* at 1311–12. *Pozzi Window*, Judge Carnes observed, does not require damage to some other "nondefective component" where, as in *Auchter* and *Pozzi Window*, a nondefective component was damaged by defective installation. *Id.*

Then, in *Carithers*, we applied *Auchter*'s "narrow[]" interpretation of *Pozzi Window* to reject several claims for damages asserted by homeowners, as assignees of the insured, for various construction defects. *See Carithers*, 782 F.3d at 1249–50 ("The *Auchter* court interpreted *Pozzi Window* narrowly"). We stated that "*Auchter* held that there is no coverage for a defective installation where there is no damage beyond the defective work of a single sub-contractor." *Id.* at 1250. Applying this

10

rule, we held that the plaintiffs could not recover for damage to brick caused by the negligent application of brick coating or damage to tile caused by defective installation because the damage to the brick and the tile was "part of the sub-contractor's work, and this defective work caused no damage apart from the defective work itself." *Id.* at 1250–51.

Importantly, however, we reasoned that the *Auchter* rule applies only when the defective work is performed by "the same sub-contractor." *Id.* at 1251. We explained that if defective work performed by one subcontractor damages work performed by another subcontractor, then there is "damage apart from the defective work itself" and therefore "property damage." *See id.* at 1250–51 ("[I]f the bricks were installed by one sub-contractor, and a different sub-contractor applied the brick coating, then the damage to the bricks caused by the negligent application of the brick coating was not part of the sub-contractor's defective work, and constituted property damage."). So under *Carithers*, whether "property damage" occurred may depend on whether the damaged property was part of the subcontractor's defective work or was the work of a separate subcontractor. *See id.*

**B.**

KJIMS maintains that, under *J.S.U.B.* and *Pozzi Window*, the underlying complaint potentially alleges "property damage" because it alleges "repair of items that were not initially defective but damaged by the defective installation." Br. of

11

Appellant at 25.    KJIMS further argues that, even under *Auchter*'s narrow interpretation of these cases, there was a potential for coverage that triggered the duty to defend.

Although KJIMS believes that *Auchter* was wrongly decided and that Judge Carnes's dissenting opinion "more accurately reflects the state of Florida law today," Br. of Appellant at 20, we are obliged to follow the majority opinion in *Auchter* and its interpretation of Florida law, even if we are convinced that it is wrong.  *See EmbroidMe.com*, 845 F.3d at 1105; *see also Carithers*, 782 F.3d at 1249–51 (applying *Auchter*).

Under *Auchter*, "there is no coverage for a defective installation where there is no damage beyond the defective work."  *Carithers*, 782 F.3d at 1250.  The district court reasoned that this rule covered all the damages asserted by the Doppelts in the underlying lawsuit.  But as we recognized in *Carithers*, application of this rule may depend on which subcontractor performed which work.  *See Carithers*, 782 F.3d at 1250–51 ("[I]f the bricks were installed by one sub-contractor, and a different sub-contractor applied the brick coating, then the damage to the bricks caused by the negligent application of the brick coating was not part of the sub-contractor's defective work, and constituted property damage.").

Here, the language of the underlying complaint, "at least marginally and by reasonable implication, could be construed" to create potential coverage under the

12

policy. *Trizec Props.*, 767 F.2d at 813. The operative amended complaint alleged that KJIMS used subcontractors for work on the residence and that the residence was "replete with construction defects" and various damage. It did not further allege which subcontractors performed which work or how the damage occurred. Given these ambiguities, the complaint's allegations are broad enough to allow KJIMS to prove that one subcontractor negligently damaged nondefective work performed by another subcontractor. *See id.* If KJIMS could establish that at least some of the damage arose in this way, there would be "damage apart from the defective work itself" and therefore "property damage." *See Carithers*, 782 F.3d at 1250–51. Because there is a potential for coverage, the duty to defend was triggered. *See Trizec Props.*, 767 F.2d at 813.

Southern-Owners replies that this reasoning "ignores . . . what constitutes covered 'property damage,' as well as the burden of alleging same to implicate coverage." Br. of Appellee at 12. But Southern-Owners fails to account for *Carithers*. And while it's ultimately KJIMS's burden to prove that "the damaged property was the work of a separate sub-contractor," *Carithers*, 782 F.3d at 1250, the question for purposes of the duty to defend is simply whether there is a potential for coverage based solely on the allegations of the operative pleading against the insured, *see Trizec Props.*, 767 F.2d at 811–13. As we explained above, there is.

13

For these reasons, we conclude that the underlying operative complaint can fairly be construed to allege "property damage" within the meaning of the CGL policy and Florida law. Accordingly, the district court erred in granting summary judgment to Southern-Owners on this basis.

## C.

In the alternative, Southern-Owners argues that, even if "property damage" was alleged, we should still affirm the judgment in its favor based on several policy exclusions which, in its view, clearly preclude coverage. We have already concluded that one of these exclusions—a completed-operations hazard exclusion— did not eliminate the duty to defend. *Southern-Owners*, 768 F. App'x at 973–74.

With regard to exclusions j(6) and j(7) of the policy, the other exclusions on which Southern-Owners relies, these provisions exclude coverage for "property damage" to the following:

> (6) That particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (7) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Southern-Owners asserts that the phrase "[t]hat particular part" refers to the "entire project at issue (*i.e.* the Subject Property in its entirety)," so in its view, these exclusions apply to any damage caused by defective work performed by or on behalf of KJIMS on the residence. KJIMS, for its part, points to authority indicating that these exclusions would not apply to property damage that occurred during operations on the property as a whole "but at a moment in time when neither KJIMS nor its subcontractors specifically worked on" the "particular part of [the] property" that

15

was damaged or must be restored, repaired, or replaced.  *See* Br. of Appellee at 15–17.  The district court did not reach this issue, however, and we decline to address it for the first time on appeal, "preferring that the district court address it in the first instance."  *Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792, 800 (11th Cir. 1992).

## III.

In sum, we hold that the allegations in the underlying operative complaint potentially create coverage for "property damage" under the CGL policy and Florida law.  We therefore vacate the district court's grant of summary judgment on that basis, and we remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED**.